## E. A. KELLOGG v. M. L. McCABE.

No. 690. Decided October 27, 1898.

1. **Evidence—Relevancy.**

Evidence which is incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute should be excluded. (P. 202.)

2. **Same.**

The credibility of a witness being in issue, and the proof having shown that he had repeatedly held public office in the county where he lived, it was improper to admit the testimony of a witness called to impeach him that the county was then controlled by "carpet-baggers, scalawags, and negro politicians," though such answer was responsive to cross-interrogatories asking why the witness he sought to impeach had been so put in office if of bad character. (Pp. 200, 202.)

3. **Same.**

Where an objection goes to the legality of evidence in a deposition and not to the manner of taking, the fact that it is responsive to an interrogatory propounded by the part making the objection is immaterial. (P. 202.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Second District, in an appeal from Throckmorton County.

*Johnson & Akin, Walton & Hill,* and *T. J. Wright,* for appellant.— Plaintiffs were entitled to the exclusion of irrelevant matter stated in answer to cross-interrogatory. Greenl. on Ev., secs. 461, 496, 51a, 52; Kennedy v. Upshaw, 66 Texas, 452; Boon v. Weathered, 23 Texas, 675; Johnson v. Brown, 51 Texas, 76; Teese v. Huntington, 23 How., 11.

The fact that this evidence was drawn out by the plaintiffs in cross-questioning defendant's witness, does that fact cut them off from objecting when defendants propose to use it, they (plaintiffs) having declined to do so? McCutchen v. Jackson, 40 S. W. Rep., 177; Hatch v. Brown, 63 Me., 416; Jewell v. Center, 25 Ala., 498; 26 N. W. Rep., 235.

*William H. Atwell,* for appellee.

DENMAN, Associate Justice.—In this cause the Court of Civil Appeals have certified to this court the following statement and question:

"J. K. Williams was an important and material witness for the plaintiffs, to establish the genuineness of the deed to their ancestor, under whom they claimed as heirs, which deed was attacked as a forgery by the defendants, and there was some evidence tending to prove the charge, though this evidence was all circumstantial. There are also circumstances shown in the record which, it is insisted, tend to connect the witness with the forgery. There are other witnesses, however, whose testimony tends to establish the genuineness of the deed.

"In his deposition taken by the plaintiffs, and read in evidence by them, the witness Williams testified, in answer to an interrogatory eliciting the same, as follows: 'My name is J. K. Williams. I am 72 years old, and reside at Austin, Travis County, Texas. I am a land agent, and been in that business for fifty years in Texas. Also am a surveyor and farmer. I have held different offices in Texas. In 1848 and 1849 I was deputy surveyor of Harrison County, and in December, 1849, I was elected county surveyor of Panola County, and held that office at Carthage, Texas, and re-elected to that office at different times before the Confederate war, and in 1866 I was re-elected as county surveyor of Panola County, and served as such until 1868. In 1868 I was appointed as general assignee in bankruptcy by the United States Judge, Thomas H. Duval, and G. W. Whitmore, registrar in bankruptcy, and was in that business at Tyler, Texas, in 1868, 1869, 1870, and 1871, and in 1872 I wes elected mayor of the city of Marshall, and was also county surveyor of Harrison County at the same time, and held both offices until November, 1873, when I was elected presiding or county judge, which office also made me tax assessor, which offices I held two years, and I was then re-elected county surveyor of Harrison County time and again until 1885. Of the plaintiffs I know only E. A. Kellogg. My power of attorney from the heirs of A. G. Kellogg gives me one-half of the lands, or one-half of the net amount of what we may realize out of it by suit, compromise, or sale of the same, and of course my interest depends on the termination of this suit. Yes; I received that old deed from L. C. Hooper, administrator of the estate of Richard Hooper, September 2, 1873. I kept that old deed in my possession until in 1893, when I turned it over to Smith & Tucker to file this suit, which was about twenty years.'

"After the deposition containing this history of his official career was filed in the suit, the defendants took several depositions of citizens residing in Harrison County touching his reputation for truth, and in cross-examination the plaintiffs propounded a question to about this effect: 'If you should answer that his reputation for truth is bad, then

state why it was that the people of Harrison County repeatedly elected him to public offices between the years 1871 and 1882. Was it a custom in Harrison County to elect disreputable men to the public offices?"

"To this cross-interrogatory the witness W. B. Parchman answered as follows: 'The only way to account for the fact that he was elected to and filled two small offices is that this county, up to 1880, was under the control of and run by "carpetbaggers" and "scallawags" and negro politicians, and disreputable rascals generally. Williams was appointed mayor by the carpetbaggers and scallawag element, but in 1880, when the white people got into control, they omitted the office of surveyor on their election tickets, and as Williams was a candidate for that place on the republican ticket, there being no candidate on the citizen's party (white man's) ticket, he was elected. He has held no office since the republican and negro element has been downed, except as above stated.'

"When this answer was offered in evidence, the plaintiffs objected thereto, upon the ground that the same was 'irrelevant and improper testimony.' The objection was overruled, and plaintiffs took their bill of exceptions, to which the district judge appended the following explanation: 'In taking the deposition of J. K. Williams, plaintiffs had proved by him all the various positions to which he had been elected by the people in Harrison County.' (See statement of facts.) 'The evidence above set out was plaintiffs' own testimony brought out on cross-examination. When same was admitted, I instructed the jury to consider said testimony for no other purpose than as in rebuttal in explanation of King Williams' testimony as to holding official positions. When I finished my charge, I submitted it to plaintiffs' counsel and asked them if they wished any further or additional instructions, and they answered no.'

"The instruction to the jury on this evidence, referred to in the explanation, must have been oral, as there is no such written instruction found in the record.

"The evidence is conflicting as to the genuineness of the deed.

"Error is assigned to the court's action in overruling plaintiffs' objections to this evidence, and the decision of this case in this court turns upon the admissibility of this evidence. We therefore deem it advisable to certify to your honorable court the question:

"Whether or not, under the circumstances, and for the purpose named, and with the oral instruction of the court, the evidence was relevant and properly admitted?"

The main issue seems to have been as to whether the deed was forged. Williams having been offered as a witness to establish the instrument, the additional issue was presented as to his credibility. Any circumstance which tended to prove the latter issue also bore upon the former.

It may be difficult to maintain in its entirety the general rule laid down in Greenleaf on Evidence, section 51a, that evidence "is admissible if it *tends* to prove the issue" in face of the fact that under well established rules of law evidence must often be excluded, which, if admitted,

would reasonably influence a conclusion; but it is clear that the proposition laid down in section 52, that all evidence must be excluded which is "incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute" must be correct. Whether any given evidence when offered and objected to is so *incapable*, is a question of law to be determined in each case by the court, and unless it appears to the trained judicial mind that it is reasonably calculated to properly influence the jury in reaching a verdict, it should be excluded. Applying these principles to the case before us, we are unable to discover how a knowledge of the moral character or political methods of the persons who elected or appointed Williams to office could properly have influenced the jury in determining his credibility as a witness in this cause. We see no reasonable or logical connection between the political conditions outlined in the evidence as existing in Harrison County prior to 1880 and the issue of credibility to be determined on this trial. If, however, there was a doubt in the mind of the court, as there must often be, as to the admissibility of such testimony, its inflammatory character should solve the doubt in favor of its exclusion. We do not think the fact that the plaintiff propounded the interrogatory is of any importance in determining the question before us, which goes to the legality of the evidence and not to the manner of taking same.

As answer to the question certified, we are of opinion that the evidence was not relevant and was improperly admitted.