## GRAHAM v. KESSELER. (No. 8492.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 23, 1916. On Motion for Rehearing, Jan. 27, 1917.)

1. EVIDENCE ⬅106(5)—RELEVANCY.

In action to recover plaintiff's compensation as editor of a paper under a contract with defendant, plaintiff's testimony that defendant took money out of the business to buy beer should have been excluded, there being no alle-

gation of defendant's mismanagement, and such testimony being calculated to prejudice the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 187; Dec. Dig. ⊂══106(5).]

2. EVIDENCE ⊂══99—RELEVANCY IN GENERAL.
Evidence which is incapable of affording any reasonable presumption or inference as to the principal matter in dispute should be excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 123, 137–143; Dec. Dig. ⊂══99.]

3. MASTER AND SERVANT ⊂══80(5) — ACTION FOR COMPENSATION — VARIANCE BETWEEN ALLEGATIONS AND PROOF.
Where plaintiff alleged an option to take additional salary, or an interest in the business, "within a reasonable time," and the proof showed a different contract, held that there was a variance between allegations and proof.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 114; Dec. Dig. ⊂══80(5).]

4. MASTER AND SERVANT ⊂══80(13) — ACTION FOR COMPENSATION—OPTION—QUESTION FOR JURY.
Where a plaintiff alleged an option to take additional salary or an interest in the business "within a reasonable time," the question of whether he exercised his option within such time should have been submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 121, 122; Dec. Dig. ⊂══80(13).]

5. FRAUDS, STATUTE OF ⊂══125(3)—OPERATION FOR BENEFIT OF DEFENDANT.
The statute of frauds does not render a contract thereunder absolutely void, but voidable only, and the statute is for the benefit of defendant.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 277½; Dec. Dig. ⊂══125(3).]

6. FRAUDS, STATUTE OF ⊂══148(2)—PLEADING—CONTRACT PRESUMED TO BE IN WRITING.
The presumption is that a contract pleaded, which would otherwise be affected by the statute of frauds, was in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 354; Dec. Dig. ⊂══148(2).]

7. APPEAL AND ERROR ⊂══1033(3)—REVIEW—ERROR FAVORABLE TO APPELLANT.
Where evidence objected to by appellant tended to show a different contract from that pleaded by appellee, and consequently more favorable to appellant, the ruling will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4054, 4055; Dec. Dig. ⊂══1033(3).]

8. ACCORD AND SATISFACTION ⊂══27 — QUESTION FOR JURY.
Where no controversy existed between parties as to salary due plaintiff except as to $3 which was then paid, the acceptance of a check "in full of salary" was not, as a matter of law, an accord and satisfaction, but this was a question for the jury.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. § 83; Dec. Dig. ⊂══27.]

Appeal from Young County Court; W. P. Stinson, Judge.

Suit by F. A. Kesseler against R. G. Graham. Judgment for plaintiff, and defendant appeals. Reversed and remanded. Motion for rehearing overruled.

C. W. Johnson, of Graham, and Miller & Miller, of Ft. Worth, for appellant. B. W. King and C. F. Marshall, both of Graham, for appellee.

BUCK, J. This suit was instituted on September 25, 1915, by appellee against appellant, to recover the sum of $995, alleged to be the balance of salary due, at $7 per week, for 155 weeks, prior to the filing of the suit, after the payment of $18 per week, which, in effect, is admitted in the petition, and after a credit of $90 for lost time had been allowed. A trial, in the county court of Young county, October 28, 1915, resulted in a verdict in favor of plaintiff for the full amount, upon which judgment was rendered, and the defendant appeals.

The petition alleged that on September 26, 1912, plaintiff and defendant entered into a contract, whereby defendant employed plaintiff to work for him as editor of the West Texas Reporter for the sum of $18 cash per week, and in addition thereto plaintiff was to have a choice of one-half of the profits of said newspaper, if any accrued, or the additional sum of $7 per week added to his salary of $18 per week, as plaintiff might see fit to elect at any reasonable time during his employment. It was further alleged "that at many times during the year 1914, plaintiff elected, and here now elects, to have defendant pay him the balance due on said contract," and that at the time stated plaintiff elected on his option, and made demand on the defendant, that he pay him the balance of his salary, which defendant refused.

Defendant, after a general denial, pleaded the statute of two years' limitation, and further alleged that plaintiff had worked for the defendant prior to September 26, 1912, in a job printing establishment at a weekly salary of $18; that on said date, plaintiff and defendant agreed to establish a weekly paper to be called, The West Texas Reporter, the plaintiff to act as editor thereof; that neither party had extra capital, but that the defendant had commercial credit, while plaintiff was without such credit. By the terms of the contract, the defendant was to purchase the necessary equipment on such terms as he could secure, and the plaintiff was to continue at a weekly salary of $18, but was obligated to allow out of such salary the sum of $3 per week to be applied as a sinking fund to pay out the plant, together with the expected earnings of the enterprise. That plaintiff and defendant as prospective partners were to continue their labors on the newspaper until the created indebtedness "had been cleared according to the terms of said weekly sinking fund," together with the earnings of the paper, whereupon the plaintiff would become the owner of a one-half interest in said enterprise. It was further alleged that the plaintiff failed to

allow out of his weekly salary the $3 provided as a sinking fund, but in fact used the entire weekly stipend. Defendant further alleged that the plaintiff had made no demand upon him for said $7 per week extra salary, and that defendant had never made any promise to plaintiff to pay such extra salary, but that, on the other hand, the plaintiff had, on or about October 1, 1915, without any notice to defendant, quit work and abandoned the contract, whereupon full and final settlement was made with plaintiff, and the balance of his salary was paid to the plaintiff in a check, for the full amount, which was accepted by the plaintiff in full settlement of all demands, and that hence there was accord and satisfaction between plaintiff and defendant.

Only sufficient evidence will be outlined herein to make clear the discussion of the questions presented for review. Plaintiff testified that he began work for defendant as editor of said newspaper on September 26, 1912; that he had worked for defendant theretofore as a job printer for ten months; that by the terms of the optional contract, plaintiff was to work for Graham at $18 per week, and to have an option at the end of the year of $7 per week extra salary, payable in cash, or to have an interest in the business with this $7 per week credited to him as a payment on such business, provided plaintiff was suitable to defendant as editor of said paper; that when the year had closed, on September 26, 1913, he made demand on the defendant for the interest in the business, but that defendant refused to allow plaintiff any interest in the business, and to properly credit plaintiff's account for the extra $7 per week for the past year, and that thereupon plaintiff demanded of defendant the year's salary at $7 extra per week, but that defendant failed and refused to pay the same "later on"; that on October 1, 1914, the government required a statement of the ownership of the paper to be furnished, and that at that time plaintiff demanded that he be shown as part owner of such paper in said statement, but that defendant refused this request, for the stated reason that a part of the equipment was under mortgage, and that, as the mortgage was given by defendant as the sole owner, defendant did not think it best to make it appear that he had sold or parted with a part of his interest in the establishment, whereupon plaintiff made demand on him for the back salary, and defendant never denied owing it, but said that it was too much money to give up at that time; that defendant got behind with plaintiff's salary at $18 per week, and that plaintiff at various times demanded of the defendant the $7 extra salary, and defendant promised to arrange the matter, but never did, and the plaintiff had to quit work because the defendant would not pay him what he was due; that again, in April, 1915, when the same

statement as to the ownership of the paper was required by the government. plaintiff demanded a showing of his interest in the business, but defendant again refused to make such showing; that plaintiff prepared a statement showing his interest in the business, and requested the defendant to sign the same, but that the latter refused so to do. He further testified that that:

At said time "I told him that, as he did not and would not sign the statement, I would claim the $7 which he had promised. At the time I made the demand for the extra salary, I did not waive my right to my interest, but saw that Mr. Graham was not going to allow me any interest, and I then took care of the other phase of the original contract. The 20th day of September, 1915, the defendant had indorsed for me creditors' bills, and when he settled he deducted from my $18 per week wages these bills, with my consent. He did not otherwise pay those bills to Street & Co., the John Kisinger note. I arranged that they be paid out of my future salary. When I quit work, he settled all of the rest of the claims on the $18 per week basis, and made out a check for the balance, which was for $6.54. I claimed $3 more, and the defendant paid it in cash. I did not cash the check, because I thought that it would effect a full settlement, when in fact it was not a full settlement, as the check stated it was in 'full of salary.' Thereafter, on the 25th day of September, 1915, this suit was brought."

[1] Appellant's first assignment is directed to the admission of the following testimony by plaintiff on redirect examination:

"I do know that he (defendant) has some extravagant habits and that he has taken money out of the business to buy beer."

Defendant objected to this testimony as irrelevant and immaterial, and calculated to prejudice the defendant before the jury, and that it was intended for that purpose, and injected personalities into the suit, there being no evidence that the use of the beer in any way affected the business, or in any way relaxed the defendant's effort to make the business a success, this being a suit for a specific sum of money alleged to be due as salary, and that the use of the beer did not tend to establish any issue, even if it did affect the revenues, of which there was no evidence. The court approved defendant's bill of exception, complaining of this action, with the following statement in the way of a modification:

"That plaintiff testified that he knew that money was taken out of the business by defendant and spent for beer."

We are of the opinion that this testimony was improperly admitted, and that it was reasonably calculated to prejudice the rights of defendant. Plaintiff in this suit was seeking to recover a sum of money which he alleged was due him as extra salary, and there is no allegation contained in plaintiff's petition of mismanagement of business on the part of defendant, or the misuse or waste of the revenues derived therefrom. While defendant did allege in his answer that on account of the editorial attitude of the paper on local matters and conditions, and the withdrawal of patronage due there-

to, the paper had not prospered, and that its indebtedness was as great at the time of the filing of the suit as it had been at any time, and no profit had been earned, and that in spite of such failure of profits, and the additional loss from the wear and tear of the machinery and other equipment purchased and used in the business, the defendant had kept plaintiff on the pay roll, etc., yet we do not think that such pleadings, apparently surplusage, injected into the case any issues which would have made the testimony objected to admissible. Subject to defendant's plea of limitation, the only issue presented is whether the contract as claimed by plaintiff was made. It is not contended by appellee, nor is it stated by the court in his quoted qualification of appellant's exception, that the testimony complained of was admitted for the purpose of shedding light upon the issue of whether or not defendant agreed to pay plaintiff, under the conditions pleaded, the extra salary of $7 per week, nor can we see that it is admissible for such purpose. In the case of Stone v. Day, 69 Tex. 13, 18, 5 S. W. 642, 645 (5 Am. St. Rep. 17) it is said:

"During the progress of the trial, one of the issues being whether Simon Stone purchased the lots in question with his own money, a witness for appellee was permitted to state, over appellants' objections, that Simon Stone was dissipated in his habits, and an habitual frequenter of saloons and houses of ill fame, which is assigned as error. Any testimony directly tending to show that Simon Stone had no money, or not enough to have purchased the property in controversy, would have been admissible, though it might have prejudiced the jury against appellants; and in this connection it would have been competent to have shown whether he owned any property, or was seen with money at or before the time of the purchase, whether he was engaged in any business, whether frugal or prodigal in his expenditure, and whether he was industrious or indolent in his habits, whether there were judgments or executions against him, and other facts of like character having a tendency to elucidate the issue. The evidence objected to was in reference to the personal habits of Simon Stone, in directions where a good deal of money is supposed to be squandered, but not tending to show that he was of extravagant habits, or, if so, the tendency would be remote, and, being calculated to prejudice the minds of the jury, should, in our opinion, have been excluded."

[2] In the cited case the claim of admissibility of the evidence offered would, it seems, rest upon a more substantial basis than in the instant case. Evidence which is incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute should be excluded. Kellogg v. McCabe, 92 Tex. 199, 47 S. W. 520; G., C. & S. F. Ry. Co. v. Matthews, 32 Tex. Civ. App. 137, 73 S. W. 413, 418, 74 S. W. 803. We think this assignment should be sustained, and that by reason thereof the judgment must be reversed. In view of another trial we will discuss some other questions raised.

[3] It will be remembered that plaintiff's petition alleged the making of an optional contract, and that under it plaintiff had the right to elect whether he would take one-half of the proceeds, if any, accruing to the business, or the additional weekly salary, "at any reasonable time during his employment, or thereafter." Plaintiff further alleged:

"That at many times during the year 1914 plaintiff elected, and here now elects, to have defendant pay him the balance due on said contract," etc.

By his testimony plaintiff makes out a different agreement as to the time when he should elect between the two propositions offered. He testified:

"I was to work one year at $18 per week, and to have an option at the end of the year on $7 per week extra salary, payable in cash, or I was to have an interest in the business with this $7 per week credited to me as a payment on the business, provided that I was suitable to Mr. Graham as editor of said paper. I was, with his consent, to become a partner with said $7 per week for the past year as a part, or the first, payment on said business; but in case Mr. Graham refused to allow me the interest in the business, I was to receive the $7 per week extra, as stated above, at the end of the year, September 26, 1913."

[4] There appears to be a variance between the allegata and probata. If the recitation of plaintiff's petition be taken as the guide, as it must be upon this question, it would then become, under appropriate instructions from the court, a question for the jury as to whether plaintiff had exercised the alleged option "within a reasonable time." We make these observations in view of appellant's second assignment, which urges error in the verdict for the full amount, inasmuch, as asserted, $364, at least, was clearly barred by the statute of two years' limitation. The court instructed the jury that the plaintiff could not recover, in any event, for any salary that might have accrued two years before the filing of the suit. While we do not feel that we are called upon to sustain the second assignment, as presented, yet upon another trial the question of whether or not plaintiff exercised his option within a reasonable time, should be submitted to the jury.

[5] Appellant's third assignment urges that the court erred in admitting any evidence, over the objection of defendant, tending to establish the contract pleaded by plaintiff, because, as asserted, said contract was oral and not to be performed within one year; the objection being that the contract was void under the statute of frauds. It does not affirmatively appears from the pleadings in the case that the alleged contract was oral, except as it might be so inferred from defendant's plea of the two years' statute of limitation as a bar. Nor does it appear that defendant specially pleaded the statute of frauds. It is not affirmatively shown in the statement of facts that the contract was entirely oral, though, since no written instrument was offered in evidence by plaintiff, and no objection urged by defendant to plaintiff's testimony as to

the terms of the contract, it is apparent that the parties conducted the case upon the theory that such contract was oral. The statute of frauds does not render a contract thereunder absolutely void, but voidable only. It was enacted for the benefit of defendants. Crutchfield v. Donathon, 49 Tex. 691, 30 Am. Rep. 112. The classes of contracts coming within the statute of frauds may be successfully resisted, when the statutory requirements are not observed, if the defendant invokes the statute. Such contracts are not per se void or illegal, but the statute only prohibits the enforcement of them by an action. Robb v. Railway Co., 82 Tex. 392, 18 S. W. 707; Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893, writ of error denied in 101 Tex. 629, 89 S. W. xvi; Brown v. Randolph, 26 Tex. Civ. App. 66, 62 S. W. 981.

[6] The presumption is that a contract pleaded, which would otherwise be affected by the statute of frauds, is in writing. The statute works no change in the pleadings, it merely regulates and establishes a rule of evidence. Hence, when the contract is pleaded, generally, it is presumed to be in writing. Robb v. Railway Co., 82 Tex. 392, 18 S. W. 707; Cross v. Everts, 28 Tex. 523; Dawson v. Miller, 20 Tex. 171, 70 Am. Dec. 380; McKinley v. Wilson, 96 S. W. 112; Lewis v. Alexander, 51 Tex. 578. Hence, as presented and under the state of the pleadings, appellant's third assignment must be overruled.

[7] Moreover, the evidence to which objection is urged tended to establish a contract different from that pleaded, and therefore was, in the opinion of the majority, at least, favorable to appellant, and the ruling should not be held to show prejudicial error.

[8] Under his fourth assignment, appellant presents the proposition:

"Where one party, in settlement with another, accepts a sum less than his demand, he is bound thereby; and his action affords a complete bar of the original demand."

This proposition is predicated upon the testimony of plaintiff that upon the settlement with defendant he received a check for $6.54, marked "in full of salary," and, in addition, $3 in money. We do not think that this evidence alone can be held to show an accord and satisfaction. In the first place, there was no controversy between plaintiff and defendant as to the amount actually paid being due, except, as to the $3. Both parties agreed, in their pleadings and in their testimony, that plaintiff was to receive $18 per week. Where there is a bona fide controversy between parties, over the amount due from one to the other, and a check is given by one to the other in full of all demands, and accepted by the other, which check is for less than the amount claimed by the payee, it is a good accord and satisfaction. Hunt v. Ogden, 58 Tex. Civ. App. 443, 125 S. W. 386; Cristler v. Williams, 62 Tex. Civ. App. 169, 130 S. W. 608. But in the case of liquidated demands, a different rule obtains. As is said in 1 R. C. L., p. 184, § 15:

"It was decided at an early date as regards liquidated demands that the mere payment of a lesser sum on the day fixed by the contract, or after default, cannot be any satisfaction for the whole, though it was agreed that such payment should satisfy the whole, because of a want of consideration for the discharge of the whole. This question has arisen in the courts in almost numberless instances, and has received the same solution notwithstanding the courts, while so ruling, have rarely failed on the recurrence of the question to criticize and condemn its reasonableness, justice, fairness, or honesty."

Section 16, page 186, of the same authority, reads, in part, as follows:

"The fact that upon part payment of a liquidated claim a written receipt in full is given by the creditor does not, according to the great weight of authority, take the case out of the general rule and show even prima facie a good accord and satisfaction, and most certainly does not conclusively do so."

The case of Powers v. Harris, 42 Tex. Civ. App. 250, 94 S. W. 136, by the Court of Appeals for the Fourth District, presents a situation somewhat similar to that shown in the instant case, in that as to a part of the indebtedness claimed there was no controversy, and as to a part there was a controversy. The court sustained a settlement based upon the payment of the amount concerning which there was no controversy. To sustain the plea of accord and satisfaction, there must be an agreement, either express or implied, of a settlement on the basis of a substituted contract, where the obligation sought to be extinguished arises from contract, and if the obligation arises in tort, the substitution of an original agreement in its place. 1 Cyc. 311. A consideration is necessary to render the accord and satisfaction valid, but mere inadequacy of consideration, it seems, constitutes no ground of impeachment more than in other classes of contracts. There must be some advantage, or presumed or assumed advantage, accruing to the party who yields his claim, or some detriment to the other party. To constitute a valid accord and satisfaction, it is also essential that what is given or agreed to be performed should be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of any obligation he may be under to the creditor, and that the creditor should have accepted it with the intention that it should operate as a satisfaction. 1 Cyc. 312, § C. While the question presented under this assignment is not devoid of difficulty, yet we have finally concluded that, under the evidence of plaintiff and defendant, we are not justified in concluding as a matter of law that in the settlement made between plaintiff and defendant on or about September 20, 1915, there was an understanding and agreement between the two that the amount paid, in cash and by check, should constitute a full settlement of all demands theretofore urged by plaintiff.

In addition to the testimony of plaintiff heretofore quoted, defendant testified as follows:

"Up to 1 o'clock September 20, 1915, I had never received any notice from him (plaintiff) that he was going to quit; he had agreed to remain with me five years. Nothing was said in our verbal contract about any other salary but $18 per week, which amounts to $78 per month, and this I paid him in full. About a week after he quit, I asked his brother, A. Kesseler, if the plaintiff was coming back to work. He said, 'Not until you pay him what you owe him,' as well as I remember. A few days later, I sent him word to come to the office, and I would settle with him. He came as requested, and I handed him a statement of his account, and we went over the books together, and he accepted the account as correct, with the exception of one day's wages, $3, which I had deducted for absence from office on personal business. This he objected to, and I reimbursed him for this item by handing him $3 in cash, which he accepted, and he signed the 'statement of his account,' 'O. K. Accepted. F. A. Kesseler.' This account showed a balane due him, after deducting the security notes and accounts, as before stated, amounting to $68.91, of $6.54, for which I handed him my check, and he accepted it without complaint or objection. He has not returned the check to me."

The defendant further testified that the plaintiff had never made any demand on him for the additional $7 a week claimed in plaintiff's petition, and that he (defendant) knew nothing of the existence of any such claim until the filing of the suit. Under this state of the record, we incline to the opinion that it was a question for the jury as to whether the settlement pleaded by defendant constituted accord and satisfaction, and that upon another trial this issue should properly be submitted to the jury.

We do not believe it necessary to discuss other assignments contained in appellant's brief, inasmuch as, except as such questions are controlled by what has been hereinabove said, they presented errors not likely to arise upon another trial.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded.

## On Motion for Rehearing.

In his motion for rehearing, appellee, through his counsel, questions the correctness of the following language contained in the original opinion used in connection with the court's discussion of appellant's first assignment, to wit:

"The court approved defendant's bill of exception complaining of this action with the following statement in the way of a modification: 'That plaintiff testified that he knew what money was taken out of the business by defendant and spent for beer.'"

Appellee urges that the trial court's modification of this bill of exception, being No. 2, is in the following language:

"The court admitted this testimony for the purpose of rebutting the defendant's allegations in his answer, in which he claimed that the paper had failed on account of hard times," etc.

The record before us, as shown by the transcript, page 9, does not contain the language used by appellee in his motion for rehearing, but does contain the exact language quoted in our original opinion. There is some language used in this motion, to wit, "It would be ridiculous for this court to hold," etc., that we ascribe rather to the zeal and earnestness of the counsel than to any purpose to be disrespectful to this court. We have carefully considered the motion, and find no reason for changing the conclusions heretofore expressed.

The motion is overruled.