**JACKSON–STRICKLAND TRANSP. CO.,
Inc., v. SEYLER.**

No. 13831.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 25, 1938.

Rehearing Denied Jan. 20, 1939.

Rawlings & Sayers and Nelson Scurlock, all of Fort Worth, for appellant.

William R. Watkins, of Fort Worth, Fred H. Minor, of Denton, and Watkins & Mays and Ross B. Lea, all of Dallas, for appellee.

BROWN, Justice.

Appellee, Ben Seyler, and his wife, Agnes, were driving through the town of Sanger, Texas, on a State highway, going south, and their automobile collided with one of appellant's trucks, which was being operated by an agent of appellant, Jackson-Strickland Transportation Co., Inc., in the opposite direction. The collision was occasioned by the truck driver swerving his truck to the left to avoid striking a wagon that was proceeding in the same direction as the truck. The accident happened at night.

Mr. and Mrs. Seyler were seriously injured and their automobile was badly wrecked. Mrs. Seyler was pregnant and the severe injuries she suffered killed the baby and brought about a miscarriage.

At the time of the trial of the case, some six months after the accident, neither Mr. Seyler nor his wife had recovered from their injuries, and each had broken bones that had not united. The undisputed evidence discloses that both were incapacitated for a considerable period of time and that such incapacity will continue for some time. It also discloses that both will be compelled to have medical and, in all likelihood, surgical attention succeeding the trial.

Appellee, Seyler, sued for damages because of the personal injuries sustained by him and his wife, and for exemplary damages, and for the damage occasioned by the wrecking of his automobile.

The case was tried to a jury and one hundred and eight questions were submitted to the jury for determination.

The jury found, in substance, that the truck was being driven at a greater rate of speed than 20 miles per hour; that such rate of speed was a proximate cause of the collision; that the truck driver failed to keep a proper lookout; that such failure was negligence and a proximate cause of the collision; that the truck driver failed to give any signal as he approached the curve on the highway before the collision; but that such failure was not negligence; that the truck driver turned the truck to his left immediately before the collision and failed to sound his horn immediately prior to such turning, and that such failure to sound the horn was negligence, and a proximate cause of the collision; that the truck driver failed to have the truck under proper control immediately prior to the collision, that such failure was negligence and a proximate cause of the collision; that the truck driver operated the truck at a greater rate of speed than 20 miles per hour as he approached the city limits of Sanger, and that he failed to reduce the speed of the truck to 20 miles per hour as he drove into the city limits of Sanger, but that such failure to reduce the speed of the truck was not negligence; that the driver of the truck was not guilty of negligence in turning the truck to the left, immediately prior to the collision; that the truck driver did not fail to apply his brakes as he turned to the left; that the truck driver drove the truck onto his left hand side of the highway, at the time of the collision, and such act was negligence and a proximate cause of the collision; that Seyler and his wife were in a position of peril, immediately prior to the collision, but that the truck driver did not discover such fact in time so that by the exercise of ordinary care in the use of the means at hand, consistent with safety to himself and his truck, he could have avoided the collision; that the accident was not unavoidable. The jury found all issues of contributory negligence charged to Seyler and his wife favorably to the plaintiff, and found that the existence of the wagon at the time and place of the accident was not the sole proximate cause of the collision, and was not a new and independent cause thereof; that the failure of the driver of the wagon to give a visible or audible signal of the presence of the wagon was not the sole proximate cause of the collision, and was not a new and independent cause thereof, and such findings were likewise made with reference to the failure of the driver of the wagon to equip same with lights.

In submitting the measure of damages, the trial court gave seventeen distinct issues.

The first issue is as follows:

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence will reasonably compensate the plaintiff Ben Seyler for injuries sustained by him as a direct and proximate result of the collision, taking into consideration exclusively physical pain and mental suffering prior to this date, if any? Answer giving amount in dollars and cents, if any.

"Answer: $2,750.00.

"In answering No. 92 you must exclude from your consideration all damages and mental suffering and grief he may have sustained by reason of the death of the baby, and you must not take into consideration his loss of the society and companionship of the baby."

The next issue required the jury to find whether or not Ben Seyler will suffer any physical or mental pain in the future, and the answer was "Yes," and this issue is followed by one inquiring of the amount of damages and contains all of the instructions and safeguards found in the quoted portion of the charge. The jury found $487.50.

The next issue is with reference to Mrs. Seyler, and is as follows:

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence will reasonably compensate the plaintiff Ben Seyler for injuries sustained by Mrs. Agnes Seyler as a direct and proximate result of the collision, taking into consideration exclusively physical pain and mental suffering sustained by her prior to this date, if any, and you must exclude from your consideration all damages and physical pain and suffering and grief which Mrs. Agnes Seyler may have sustained by reason of the death of the baby, and you must not take into consideration her loss of the society and companionship of the baby? Answer giving amount in dollars and cents, if any.

"Answer: $10,000.00."

The next issue requires the jury to find whether or not Mrs. Seyler will suffer physical and mental pain in the future, and the jury answered "yes," and this issue is followed by one inquiring as to the amount of damages, and contains all of the instructions and safeguards found in the quoted

portion of the charge. The jury found $750.

The next issue required the jury to find what sum of money will compensate Ben Seyler for his diminished capacity to labor and earn money prior to the date of the trial, and the jury found $1,000. The next issue required the jury to find whether or not Ben Seyler will suffer a diminished capacity to labor and earn money in the future, which the jury answered "Yes," and then follows the issue inquiring of the amount, and the jury found $1,500.

The next issue required the jury to find the sum covering the reasonable and necessary doctors', hospital, medical and nurses' bills already incurred by reason of injuries suffered by Mrs. Seyler, and the finding is $1,500. The next issue covers such bills incurred by reason of injuries sustained by Ben Seyler and the jury found $350.

The jury then found that similar expenses would be incurred in the future by reason of Mrs. Seyler's injuries, and the amount is set at $200; and that similar expenses would be incurred in the future by reason of Ben Seyler's injuries, and the amount is set at $500.

Then follow the two issues covering damage to the automobile, making a net recovery of $556 for such loss.

Under these findings, the trial court rendered judgment for the appellee, Ben Seyler, in the sum of $19,106, such plaintiff below having remitted the sum of $487.50, being the amount the jury assessed as damages for the future physical and mental pain that will be suffered by Ben Seyler.

The defendant below, Jackson-Strickland Transportation Co., Inc., has appealed and presents eleven assignments of error.

The first complains of the admission in evidence of a certain plat that was made by one Wilson, constable of the precinct in which the accident occurred, who lived in Sanger and who went to the scene of the accident just after it happened.

It appears that this witness made a diagram showing what he found and afterwards made some crude measurements and re-made, or made a second and more complete map, or diagram, and the trial court admitted such map in evidence after the witness had testified to what he found on the ground, from which he made the diagram.

While the witness was testifying to the facts and conditions found by him, immediately after the accident, and was using the map he had made in so testifying and counsel for appellee tendered the map in evidence, the counsel for appellant said: "The defendant has no objection to this witness detailing the facts as he knows them, but we do object to him going out there a week after the accident was over and drawing a plat, and by way of illustration he purports to show by this plat apparently where the truck was at the time of the accident. The witness testified he was not present and did not see that; it is hearsay, inflammatory and prejudicial."

Counsel for appellee then asked the witness: "Does that plat correctly reflect the position of the streets and the trees and the position the truck was in at the time you went down there that night?" And the witness answered, "Yes, sir." The court then overruled the objection and appellant's counsel took the witness over and asked him what scale was used in drawing the map, and the witness replied "just by stepping and measuring it," and appellee's counsel inquired: "You didn't take any measuring stick or anything out there, you just stepped it off?" The witness answered, "I just stepped it off."

Then counsel for appellant made the following statement: "We renew our objection; it doesn't correctly and truly reflect the conditions as they existed there on the ground and it serves no useful purpose, and it is inflammatory and prejudicial." The Court: "Objection overruled." Exception was taken.

Let it be observed that nothing had been said by this witness concerning the map purporting to show where the truck was at the time of the accident. This witness had made no attempt to state or say where on the highway or on this map the collision occurred. And there was no testimony indicating that the map was made by the witness a week after the accident and a week after the witness had gone out to the scene of the accident. This witness had testified to nothing on the map excepting the physical facts found by him, when he reached the scene, very shortly after the accident. He had testified to nothing concerning the course taken by the truck or the marks made by the wheels of the truck.

■ The map, taken in connection with the actual physical facts found and detailed by the witness, does not constitute hearsay evidence.

How or why the map was "inflammatory and prejudicial" was not attempted to be shown by appellant in its objections.

No statement or explanation of anything on the map that could be construed as inflammatory or prejudicial had fallen from the lips of this witness, and the map contains nothing that purports to show any fact that could be found to be inflammatory or prejudicial to appellant's rights.

We shall endeavor to make our position clear as we develop the facts and review the position taken by appellant before us.

■ The objection that the map does not truly and correctly reflect the conditions as they existed on the ground goes merely to the weight of the testimony; the witness admitted that it was a rough sketch and that it was not drawn to any scale and that his measurements were not accurate, but he simply "stepped off" the distances.

After the plat was introduced in evidence, the following questions were asked the witness:

"Q. Did you try to trace those wagon tracks back any distance that night? A. No, sir. I just merely went around and looked at them and looked for the track of the truck and just saw the tracks of it.

"Q. What general direction did you notice the tracks of the truck made? A. All the truck tracks showed they were on the pavement (paved portion of the highway), and all at once it just turned across the highway.

"Counsel: Just a moment, if the court please, the witness * * *

"The Court: Just tell where the tracks were.

"A. They turned northwest across the highway.

"Q. About what angle? A. Kind of northwest direction.

"Q. Was it a square angle or a 45-degree angle? A. The highway there is running due north.

"Q. Yes. A. And the truck tracks showed to the northwest.

"Q. Did you notice any automobile tracks there? A. Yes, sir.

"Q. Where were they with reference to the west edge of the pavement? A. They were just north of the truck; they were on the pavement, on the west side of the pavement."

Let us see what appellant sets forth in its assignment of error.

"The court erred in admitting in evidence over the objection of the defendant duly made, the private memorandum—plaintiff's exhibit No. 11—depicting the scene of the accident and purporting to show the path traveled by defendant's truck from the point of the collision until it came to a stop on the side of the street."

The assignment refers us to a certain paragraph of the amended motion for a new trial, and it reads:

"The court erred in permitting the plaintiff to introduce in evidence a plat prepared by the witness Wilson, over the objection that the plat was hearsay as to the facts shown therein, and was inflammatory and prejudicial and did not correctly and truly reflect the conditions as they existed on the ground at the time of the collision."

If, under the record before us, the assignment of error is sufficient for review, and presents any exception to a ruling by the trial court on any objection actually made to and before the trial court, the writer is unable to discover it.

No such objection was made in the trial court as appears in the assignment of error.

There is nothing in the testimony of the maker of the plat and nothing on the plat purporting to show the path traveled by the truck from the point of the collision until it came to a stop on the side of the street.

Let us examine the "proposition" under which the assignment of error is presented. It reads:

"Since it appeared from the testimony of the witness, Wilson, that the memorandum made by him, plaintiff's exhibit No. 11, depicting the scene of the collision, was not a memorandum required by law to be made and was necessarily based to a great extent upon information furnished him by other persons, the court erred in overruling the defendant's objection to such memorandum. Such evidence clearly comes under the ban of hearsay, and furthermore was self-serving."

Nothing is found by us to indicate that the witness made the plat "from information furnished him by other persons", but all of the record discloses that he made it from the physical facts which he found on the ground, shortly after the accident. Furthermore, neither the objection just mentioned, nor that the plat was self-serving, were presented to the trial court.

■ There can be no question about the right of a witness to make and the right of a litigant to introduce in evidence a plat purporting to show the physical facts as they appeared to a witness who arrives on the scene, immediately after the happening of an event, and which plat purports to illustrate the testimony the witness gives and to make same more easily understood. Tallabas v. Wing Chong et al., Tex.Civ. App., 72 S.W.2d 636; Missouri K. & T. Ry. Co. v. Moore, Tex.App., 15 S.W. 714; 17 Tex.Jur., para. 318, pp. 736–738.

■ We find no error in admitting the plat in evidence, but if same were error, it was harmless in this case.

The argument presented in appellant's brief stresses the fact that the plat was harmful to its defense in that it "purports to show the place where the truck was situated and where the plaintiff's automobile was situated on the pavement before the accident occurred, and purports to show the angle made by the truck before the collision occurred and the path followed by it until it came to a stop."

As we have already observed, no such objection was made to the introduction of the plat, and no words are used on the plat which purport to disclose the matters appellant says are harmful. The witness who made the plat had not testified to any explanation of the plat that brought out or attempted to establish any of the matters objected to by appellant.

In short, appellant simply gives its interpretation of the plat as showing matters which it claims are injurious to it, when no witness has testified to such matters and the plat, on its face, does not purport to say the things complained about by appellant.

But, if it be error to admit it in evidence, no such harm resulted as is urged by appellant. The jury was not prejudiced by its introduction, because they distinctly found that the truck driver was not guilty of negligence in turning the truck to his left, immediately prior to the collision; and they found, as is further shown above, a number of issues of fact in favor of the truck driver.

There is abundant testimony and evidence in the record to support the findings made by the jury, exclusive of any that may be deduced from the plat.

The only issue that the jury determined in favor of appellee that could be said to be germane to the plat is where the jury found that the truck driver drove his truck over on the left hand side of the highway (and this is a fact that was undisputed) and that such act was negligence.

It is obvious from the record that if the truck driver had not so operated the truck the accident would not have occurred.

We take it that the angle at which the truck was driven across the center of the highway and onto the driver's left hand side is wholly immaterial; and we further observe that the maker of the plat merely described the course of the tracks of the truck as going "northwest", and the witness declined to attempt to testify as to what angle its course took.

The assignment is overruled.

The second assignment of error complains of misconduct on the part of the jury, in that they discussed the matter of insurance being carried by the truck owner and the further matter of attorney's fees to be paid by the plaintiff.

The matter was heard by the trial court and on the testimony adduced, the trial court has evidently found that no such misconduct occurred.

What we said in a recent case, opinion by Justice Speer, Sproles Motor Freight Lines, Inc., et al. v. Julia Maud Juge, 123 S.W.2d 919, supports our views.

No assignment of error is presented claiming that the verdict is excessive, save in respect to certain distinct items which will be discussed by us hereinafter.

Indeed, we cannot find from this record that the verdict rendered was influenced by any improper motive.

We do not feel the necessity of going into the details of the severe injuries and great physical and mental agony that must have been suffered by Seyler and his wife, and we do not hesitate to say that a greater award than was made would have been sustained by the evidence adduced. The fact that the jury found several issues in favor of the truck driver is proof to us that no bias, prejudice or improper motive entered into the findings made by the jury.

The record, as a whole, appears to us to show that the jurors were fair in approaching and determining the facts.

We find no merit in the second assignment of error.

The next assignment of error complains of the trial court permitting plaintiff's counsel to read the allegations in the petition which sought exemplary damages because of gross negligence on the part of defendant's truck driver.

The exception taken to the allegations were that the plaintiff does not allege any facts or fact which would allow or authorize the recovery of exemplary or punitive damages in the case.

The exception simply went to the sufficiency of the allegations to raise the issue of exemplary damages. No exception was made which might raise the issue of injury done to the defendant by reading the allegations to the jury. In other words, no exception to the effect that the allegations were inflammatory and calculated to prejudice the jury against the defendant, was urged.

If error was committed, in overruling the special exception addressed to such allegations, no harm was done appellant. No issue on exemplary damages was given to the jury and the charge specifically confined the jury to a consideration of actual damages.

Such cases as Universal Credit Co. v. Towns, Tex.Civ.App., 58 S.W.2d 864, and Exporters' & Traders' Compress & Warehouse Co. v. Shaw, Tex.Civ.App., 20 S.W. 2d 248, support our views.

The actual damages awarded by the jury are not tainted with excessiveness, and we fail to see where any harm could have been done appellant.

The next assignment of error complains of the admission in evidence of the testimony of the physician who attended Mrs. Seyler, wherein he testified that the baby to which Mrs. Seyler gave a premature birth was born dead, and the accident, injuries and shock to Mrs. Seyler killed it.

The specific complaint is that this testimony was calculated to inflame the minds of the jury and to confuse them in determining the extent and amount of damages sustained, and tended to create the belief that the suit was not only for the personal injuries sustained but was for the death of the baby.

We find no error in the ruling of the trial court.

When we examine the charge, portions of which we have quoted above, we find that the court, not once but several times, definitely instructed the jury that in arriving at the amount of damages sustained they must exclude from consideration all damages and mental suffering and grief sustained by reason of the death of the baby, and must not take into consideration the loss of the society and companionship of the baby.

■ If we are to assume—as we must—that the jury both understood and obeyed the instructions found in the court's charge, to which no objection is made, then, of necessity,. we must assume—and do assume —that the jury understood and obeyed the instructions given in the charge which render without effect the very thing that. appellant now urges before us as harmful.

■ Furthermore, the evidence was admissible as a fact and circumstance tending to show the severity of the bruises and bodily injuries and shock which Mrs. Seyler sustained. Levine v. Trammell, Tex.Civ.App., 41 S.W.2d 334, writ refused.

The cases cited by appellant, such as Kellogg v. McCabe, 92 Tex. 199, 47 S.W. 520, are not applicable to the case at bar. The Kellogg Case holds that all evidence must be excluded which is incapable of affording any reasonable presumption or inference as to a principal fact or matter in dispute.

The evidence complained of does afford a reasonable presumption or inference as to the principal fact or matter in dispute, namely, the extent, severity and result of the injuries sustained by Mrs. Seyler.

Let us turn the picture around. If, after the accident, Mrs. Seyler had given birth to a physically fit and normal child and suit had been brought because of her injuries, can one imagine the defendant, during the trial, refraining from proving that Mrs. Seyler was in the seventh month of pregnancy when she was injured, that she thereafter gave birth to a physically fit and normal child, when such evidence would have afforded a reasonable presumption, or inference, and would have tended to prove that she was not as severely injured as she desired the jury to believe the facts to be? We do not think so.

■ As we have shown in the preliminary · statement, the trial court submitted as separate items for the jury's determination: (1) the sum that would compensate Ben Seyler for physical pain and mental suffering sustained by him up to the date of the trial; (2) and having submitted the issue of the reasonable probability of Seyler suffering in like manner in the future, the sum that would compensate him for such future suffering; (3) the sum that would compensate for the physical pain and mental suffering sustained by Mrs. Seyler up to the date of the trial; (4) the sum that would compensate for such future suffering, if any, to be endured by Mrs. Seyler; (5) the sum that would compensate Ben Seyler for diminished capacity to labor and earn money sustained by him up to the time of the trial; (6) such sum for such diminished capacity in the future, if any; (7) what sum will compensate Seyler for doctors', hospital, medical and nurses' bills already incurred by him, for Mrs. Seyler; (8) what sum will cover such bills that have been incurred by him for himself; (9) what. sum will cover bills to be incurred on account of Mrs. Seyler in the future, if any, and (10) what sum will cover such bills that will be incurred by him in the future, if any.

The fifth assignment of error complains of the charge being submitted in this manner and the proposition presented asserts that this was calculated to confuse and mislead the jury into assessing double damages and to consider separately those items which properly constitute but one element of recovery.

There can be no doubt in our minds but that every item or issue thus submitted covers an element of damages for which compensation may be demanded and a recovery had, if the pleadings and proof raise the issue. Assuredly, it cannot be said that Seyler could not recover for his past physical and mental suffering, and for such similar future suffering, and for the past and future physical and mental suffering endured and to be endured by Mrs. Seyler, and recover for the diminished capacity to labor and earn money suffered by Seyler in the past, and to be suffered by him in the future, and recover for hospital, medical, doctors' and nurses' bills incurred in the past on account of the injuries sustained by him, and by his wife, and those to be incurred in the future by both of them. These are proper items of recovery.

Now let us see whether or not common sense and reason dictate that the most prudent way to submit these items is to

tender them separately and properly to the jury.

This very case illustrates the reason why this is undoubtedly the best manner in which to present the case to a jury.

Here we have the appellant complaining that some of these items or issues are not supported by proof.

It is unnecessary to cite a list of authorities which appropriately lay down the rule that where all such items of recovery are submitted to the jury in one issue and the jury returns a verdict in a single sum covering all such items and it is found that any one or more items be not supported by the evidence, the case must be reversed because the reviewing court cannot tell from the verdict how much the jury assessed in its verdict as a proper amount of recovery for the item or items which have no support in the evidence.

On the other hand, if the jury finds on each separate item, or issue, separately, it is a simple matter to reform the judgment to fit the facts.

The charge was carefully prepared and does not permit and is not calculated to lead the jury to award a double recovery. Foster v. Beckman, Tex.Civ.App., 85 S. W.2d 789, writ refused.

In Breckenridge Ice & Cold Storage Co. v. Hutchens, Tex.Civ.App., 260 S.W. 684, writ dismissed, the complaint was made that these items of recovery should have been submitted separately. The court overruled the contention and said [page 686]: "While to submit as the appellant contends might not have been error, yet it would do no more than incumber the record, and be a useless waste of time."

We do not think that the cases of Yessler v. Dodson, Tex.Civ.App., 104 S.W.2d 95, and International-Great N. R. Co. v. King, Tex.Com.App., 41 S.W.2d 234, 235, cited by appellant, are in point here or that our conclusions are in conflict with these opinions.

Mr. Justice Sharp, in the last named case, speaking for the Commission of Appeals, did not condemn the charge for submitting to the jury the items of recovery separately, but reversed the case because the items as submitted clearly call for a double recovery. An inspection of the charge so condemned discloses that it emphatically permits a double recovery.

The sixth assignment of error complains of the trial court submitting to the jury the issue covering the diminished capacity to labor and earn money suffered by Seyler in the past. The contention is that no competent evidence was adduced to support the verdict on the issue.

Seyler operated an automobile agency and employed a bookkeeper and a number of mechanics to assist in carrying on the business, and he made practically all of the sales that were made. When he was absent his bookkeeper did the best he could in the matter of sales but the testimony disclosed that Seyler went out and called on the trade to make sales. Seyler testified to the number of sales he made during the months of the preceding year, which corresponded with the months lost by him in the year in which he was injured. Seyler testified that he sometimes worked as a mechanic on automobiles, in his business. By his evidence, he established, as accurately as he could, the character of his business, his ability to work in it as a mechanic and that he was the salesman for his business, his physical condition since the accident, which is the result of the accident, and the extent of his injuries and his inability to perform the labors and work he theretofore performed, and the probability of his future impaired condition.

The case of Houston City Street Ry. Co. v. Richart, 87 Tex. 539, 29 S.W. 1040, cited by appellant, appears to us to sustain our views and not appellant's contention, in this case.

In that case, the father brought suit because of injuries to his minor son, and the court, in the charge, submitted to the jury the matter of the loss of time from work, and the lessened earning capacity of the boy, up to the arrival of the age of 21 years, as a proper recovery for the father, and submitted the pain and suffering endured by the boy, his loss of time and lessened earning capacity, after arriving at the age of 21 years, as a proper recovery for the boy.

It was urged that the charge permitted a double recovery and in discussing the charge, Chief Justice Gaines said [page 1041]: "We incline to think that a critical examination of the charge, and especially a comparison of the two paragraphs, do not sustain the contention. They seem to us to draw a line of demarkation for loss of time and lessened capacity to earn money up to the time of the son's majority,

and such loss and lessened capacity after that time, and to give a recovery to the father for the former, and to the son for the latter. However, loss of time, as we think, ought to refer to such loss as has accrued at the time of the trial. Loss of time which may subsequently occur would, in a case like this, result from diminished capacity for labor, and ought to be included in it. In a matter necessarily so indefinite and difficult of determination, much is left to the speculation of the jury, and a charge should be so framed as to define clearly the elements of damage which they are to take into computation. While determining the pecuniary loss likely to accrue from diminished capacity for earning money, they would likely consider the probable loss of time which would accrue from the injury; but it is not clear that an instruction which directs the jury to allow both for prospective loss of, and lessened capacity for, work is free from objection. It is calculated to confuse, and may result in swelling the damages. This is especially so in a case like this, in which the capacity to do continuous work remains, and the capacity to do as much work or as effective work is lessened."

If we correctly construe the quoted opinion, the vice in it is that the suit having been brought for loss of time (that is, actual earnings) from the date of the injury up to the time of the trial, and diminished earning capacity during such period, and for such elements of damage succeeding the trial and up to the day when the son arrives at the age of 21 years, as proper for the father to recover, and also for loss of time and diminished earning capacity after the son reaches 21 years of age, as a proper recovery for the son, such a charge is confusing and may result in swelling the damages, because it will be difficult for a jury, in arriving at a verdict, to separate in their minds the pecuniary loss likely to accrue from diminished capacity for earning money and the probable loss of time which would accrue from the injury.

The vice in the charge arises out of the fact that the suit is for both lost earnings and diminished capacity for work, and the Supreme Court condemns the charge, because of the language used, when asking for a recovery for prospective loss of work and prospective loss of lessened capacity for work as applied to the right of recovery by both the father and the son.

No such vice appears here. Ben Seyler seeks no recovery for loss of earnings either before the trial or subsequent thereto. He asks for remuneration for diminished capacity to work and earn money up to and subsequent to the trial.

Mr. Justice Williams, speaking for the Supreme Court, in Dallas Consolidated Electric St. R. Co. v. Mrs. Kate Motwiller, 101 Tex. 515, 109 S.W. 918, said, in speaking of the testimony showing that Mrs. Motwiller, because of her injuries, could no longer walk to her work [page 921]: "It appears that before she was hurt she could and did walk to and from her work, and that since her injuries she has been compelled to ride upon street cars. From their own general knowledge and experience the jury could say that this diminished to some extent the returns from her employment, and we think this evidence was as definite as should be required to show loss of earning power to the extent indicated by it. Evidence is adduced to put the jury in possession of facts from which they can determine the extent of impairment of earning power, and is not intended in itself to establish a fixed measure of damages. When the jury are informed of such a fact as that just stated, they have enough to enable them to allow something upon that score. *That they are not so informed as to permit them to allow for the full extent of such loss is no reason for saying that they cannot allow for the part of which they are sufficiently informed.*" (Italics ours.)

We find two reported cases where the proof showed that the plaintiffs were earning as much after sustaining injuries as they were before, and a recovery for loss of earning capacity was allowed in each case. Amberson v. Woodul, Tex.Civ.App., 108 S.W.2d 852, writ dismissed, and San Antonio & A. P. R. Co. v. Turney, 33 Tex. Civ.App. 626, 78 S.W. 256, writ refused.

When the jury were told of the physical condition of Seyler before the accident, what labors he performed in his business, the fact that he sustained a broken right arm, the bones of which had not united up to the day of the trial, and the physician attending him testified that in order to ever obtain a union of the bones there must be a bone graft made or bands put in to effect a union, and that this will require a surgical operation, and further, that Seyler suffered severe injuries to his knees and had difficulty in walking, and

the fact that the broken right arm impaired Seyler's ability to drive a car, and to work as a mechanic, in the conduct of his business, and the fact of the loss of much time from his business, as a result of his injuries, appears to us to furnish evidence on which a jury may well assess damages for diminished earning capacity prior to the trial, and subsequent to the trial.

If it could be said that the evidence does not sustain a recovery for diminished earning capacity in either the past or the future, the trial court having submitted these items separately, it would be an easy matter to reform the judgment instead of reversing and remanding the cause.

Let it be noted that no complaint is made of the excessiveness of the findings made by the jury on these issues. The complaint is that the evidence does not warrant a submission of the issues.

▇▇▇ The sixth assignment of error is overruled, as is the seventh complaining of the submission of the issue on future diminished earning capacity. The fact of the knees injuries, the useless right arm, which must of necessity be practically useless, if not wholly useless, until the bones are made to unite, most assuredly furnishes some evidence of diminished capacity to earn money in the future.

When we examine Gulf, C. & S. F. R. Co. v. Williams, Tex.Civ.App., 136 S.W. 527, writ refused, cited by appellant, we find that it supports the recovery sought here.

▇▇▇ The eighth and ninth propositions cover the eighth, ninth and tenth assignments of error, which complain of the findings by the jury on the supposed necessary and reasonable expenses incurred up to the trial by reason of the injuries sustained by Seyler and his wife, and those to be incurred in the future by each, as being unsupported by the evidence.

Appellant in its eighth proposition admits that the sum of $682.50, as covering such necessary expenses, is supported by the evidence, but challenges the remaining sums assessed by the jury.

The appellee, in its brief, remits all but the sum admitted to have support in the evidence. The remittitur is for the sum of $1,578.50.

The judgment is reformed so as to show a recovery by appellee in the sum of $17,528.50, and as so reformed, is affirmed.