MEYERLAND COMPANY, Appellant,

v.

PALAIS ROYAL OF HOUSTON,
INC., Appellee.

No. 16880.

Court of Civil Appeals of Texas,
First District.

Aug. 18, 1977.

Fulbright & Jaworski, Jack E. Urquhart, Houston, for appellant.

Hirsch, Westheimer, Block and Wilk, Houston, for appellee; Ernest J. Altgelt, III, Seth Freedman, Houston, of counsel.

COLEMAN, Chief Justice.

This is a suit by a lessor to enjoin the continued use by a lessee of an advertising sign alleged to have been erected in violation of restrictions contained in the lease agreement between the parties. The judgment was entered on a jury verdict. It will be affirmed.

A lease agreement entered into between Meyerland Company, lessor, and Palais Royal of Houston, Inc., lessee, provided that signs erected by the lessee "shall conform to the sign criteria hereinafter set forth and that such signs shall conform with the standards set by the lessor or the shopping center as a whole." Following this provision the lease contains several specific sign restrictions.

Meyerland Company brought this suit seeking injunctive relief on the ground that one of Palais Royal's signs violated the height restrictions.

The cause was submitted to the jury on four special issues, and in answer to the first special issue the jury failed to find that the sign constituted a distinct and substantial breach of the regulations encompassed in the lease agreement. In answer to the second issue submitted the jury failed to find that prior to the erection of the sign in question Meyerland established sign standards for the shopping center as a whole other than those specifically contained in the lease agreement. The remaining issues were conditionally submitted and not answered.

■ Appellant, plaintiff in the trial court, alleged that the sign in question violated the terms of the lease agreement. Therefore it had the burden of proof on issues one and two submitted by the trial court. On this appeal it is the appellant's burden to show that the evidence conclusively establishes that the sign breached the regulations found in the lease agreement or that it violated an existing standard established for the center as a whole. No evidence or insufficient evidence points are not proper ways to attack unfavorable jury findings on which the appellant has the burden of proof. *Smith v. Safeway Stores, Inc.*, 433 S.W.2d 217 (Tex.Civ.App.-Tyler, 1968, writ ref'd n.r.e.); *Weiser v. Hampton*, 445 S.W.2d 224 (Tex.Civ.App.-Houston [1st] 1969, writ ref'd n.r.e.). In its brief appellant asserts that the undisputed evidence established that there were sign standards other than those in the lease and that these were violated by Palais Royal. We consider that the points asserted in appellant's brief are to the effect that a breach of the lease agreement is conclusively established under the evidence. *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 (Tex.1976).

■ This controversy arose when Palais Royal began preparation to erect a sign on the outside wall of the premises which it leased from Meyerland Company in Meyerland Plaza. The letters "P" and "R" were in excess of eleven feet in height. Mrs. Hess, the manager of Meyerland Plaza, objected to the erection of the sign for the

reason that it exceeded the standards provided in the lease contract. When Palais Royal continued with their efforts to erect the sign, this suit was filed.

At the trial Mrs. Hess testified that the lessor had set standards for signs to be erected by lessees in Meyerland Plaza. She stated that no sign could be over four feet in height and occupy more than 80% of the linear frontage of the store. She later stated that what she meant was that the letters in the sign should be no more than four feet in height. She testified that the standards were not reduced to writing. There is no evidence that this particular standard was ever orally communicated to Palais Royal prior to the time that the sign in question was manufactured.

There is evidence that with the exception of TSO, Penney's, and Palais Royal, the other signs that have been erected in the shopping center contain letters approximately 48 inches in height or smaller. There is no clause in the leases with TSO and Kroger's granting the lessor control over the size of their signs. Penney's occupies a two story building and its lease authorizes a larger sign.

Palais Royal had previously occupied different premises in the shopping center, and a plat attached to their lease specified that the sign would be 48 inches in height. The signs which they used on those premises were approximately six feet in height, and they were erected with the express permission of the lessor. Mrs. Hess testified that prior to the time that the three story building was constructed and leased to Penney's, the size of signs was controlled by clauses requiring the landlord's consent or by plans and specifications which were attached to the leases. After that time sign criteria were included in the lease agreement.

In the preliminary discussions for a lease agreement conducted by Mrs. Hess with Palais Royal, she furnished Palais Royal certain information concerning the signs under a title reading "Sign Criteria for Entire Premises." The same criteria were included in the lease subsequently executed in Paragraph XXI.[1]

Mr. Fuchs, the Executive Vice President of Palais Royal and chief operating officer, testified that he did not understand that there were any restrictions on the signs facing the parking lot. The only discussion he had concerning the sign criteria was the specific approval given to the size of the signs used on their old premises and the information received from Mrs. Hess previously referred to under the title "Sign Criteria for Entire Premises." Two witnesses were presented by the defendants who qualified as experts in graphic design. They testified that they had inspected the signs that had been erected at Meyerland

---

1. "Lessor covenants that Lessee shall have the right to place signs or other advertising devices, electrical or non-electrical, on or about the demised premises, providing that all such signs shall conform to the sign criteria hereinafter set forth and that such signs shall conform with the standards set by Lessor for the shopping center as a whole. Lessor expressly approves the signs which Lessee is currently using on its existing buildings. The criteria for such signs shall be as follows:

1. There shall be no flashing, rotating or moving signs or markers of any type.
2. There shall be no signs painted on the exterior surface of any building.
3. There shall be no free-standing or pylon signs other than (i) a pylon sign to be maintained by Developer displaying only the name of the Shopping Center, and (ii) a pylon sign to be maintained by J. C. Penney Co., Inc. in connection with the Penney Additional Building.
4. All signs which front on the Center Mall, or any other mall, shall be (i) not more than four (4) feet in height, except in the case of any building having two (2) or more floors above ground level, (ii) approximately flush with the wall of the building to which affixed, (iii) of a length which does not exceed 80% of the linear frontage of the store upon which it fronts, and (iv) of a design which is uniform with other signs similarly placed.
5. Signs which are under building canopies shall be (i) at right angles to the store front, (ii) of a design which is uniform with other signs similarly placed under building canopies, and (iii) not more than four and one half (4½) feet wide and twelve (12) inches high.
6. There shall be no roof-top signs, except those already installed.
7. No signs will be permitted at the rear of any buildings except in the case of stores with customer entrances opening directly on to the parking areas."

Plaza to see if they could recognize any overall standard for signs in the center. Each testified that they were not able to discern any standard from visual inspection.

None of the criteria set out in Paragraph 21 of the lease agreement relates to the size of the letters in the sign. The Palais Royal sign in question does not violate any of the criteria set out in the lease agreement. The only one of the criteria relating to the size of signs applied to signs erected on a mall.

Mrs. Hess testified that at one point there was a four foot restriction on the height of signs and at another point there was a four foot restriction on the height of the letters on the signs. There was evidence that the plaintiff permitted some variation over the four foot standard in the height of signs as well as the height of letters in the signs. A reasonable person might conclude from the evidence that the question of the height of the letters and signs to be erected in the shopping center as a whole was a matter determined by negotiations between the lessor and the various lessees, and that no standard had been set for the shopping center as a whole. The evidence does not conclusively establish the existence of standards for the center as a whole.

In January of 1976 Meyerland Company sent certain interrogatories to Palais Royal. Interrogatory No. 8 requested that the defendant specify the names of any and all witnesses that it would call upon to testify at the trial. Interrogatory No. 10 requested that the plaintiff identify any and all persons who have any knowledge regarding whether or not there were any standards with regard to the size of signs used on exterior upper walls facing the shopping center parking lot. Number 8 was answered by naming Mr. Bernard Fuchs, and number 10 was answered by naming Mrs. Leota M. Hess and Mr. Bernard Fuchs.

The case went to trial in September 1976. Some two weeks prior to that time Palais Royal employed two expert witnesses, Morton Levy, an architect, and James Bishop, a graphics designer, to inspect the premises in preparation for giving testimony at the tri-

al. Palais Royal did not supplement the answers made to the interrogatories. When Meyerland learned that these witnesses would be called it objected to "the introduction of any witnesses not indicated in the Answers to the Interrogatories" and in the alternative moved for a continuance. The court overruled the motion and allowed the witnesses to testify.

The interrogatories were sent pursuant to Rule 168, T.R.C.P. Interrogatories may relate to any matters which can be inquired into under Rule 186a, T.R.C.P. Rule 186a permits the discovery of "information relating to the identity and location of any potential party and of persons, including experts, having knowledge of relevant facts, and the reports, factual observations and opinions of an expert who will be called as a witness . . ." In regard to expert witnesses Rule 168, supra, specifically provides "a party may be required in his answers to identify each person whom he expects to call as an expert witness at the trial and to state the subject matter concerning which the expert is expected to testify." Interrogatory No. 8 did not specifically require Palais Royal to identify the persons whom it expected to call as expert witnesses.

There is room for differences of opinion as to whether Interrogatory No. 10 includes in its scope witnesses which might have opinions as to whether or not sign standards could be discernible by inspection of the shopping center. It might be considered that the Interrogatory related only to questions of persons having knowledge of standards which had been communicated by the owners of the shopping center.

Rule 168, supra, requires a party to supplement his answer to interrogatories when he knows that the answer though correct when made is no longer true and the circumstances are such that a failure to amend the answer is in a substance a knowing concealment. Since Rule 168, supra, contemplates that a party serving interrogatories *require* that the other party identify

persons he expects to call as an expert witness, he must specifically request the names of such expert witnesses. The trial court did not err in admitting the testimony of the expert witnesses.

 The question of whether a continuance should be granted to a party during the course of a trial is addressed to the sound discretion of the trial court. The test is whether the trial court's decision was arbitrary or unreasonable. *Bennett v. Northcutt*, 544 S.W.2d 703 (Tex.Civ.App.-Dallas 1976, no writ history). We find that the trial court did not abuse its discretion in refusing to grant the motion for continuance.

 The appellant complains that the trial court's refusal to grant its motion for mistrial, based on testimony of Mr. Fuchs in which he referred to attempts to resolve the dispute over the size of the sign, was error. Mr. Fuchs testified:

". . . we tried to resolve it. As a matter of fact I gave Mrs. Hess a revised drawing."

The trial court immediately instructed the jury not to consider that question and answer for any purpose. It could be presumed that this instruction was heeded by the jury and that no harm resulted by reason of the improper testimony. *Bituminous Casualty Corporation v. Jackson*, 360 S.W.2d 900 (Tex.Civ.App.-Beaumont 1962, writ ref'd n.r.e.).

Affirmed.