**Robert PUTTER, Appellant,**

v.

**Barry ANDERSON, Appellee.**

No. 20206.

Court of Civil Appeals of Texas, Dallas.

April 24, 1980.

Rehearing Denied June 25, 1980.

Richard M. Lannen, Akin, Gump, Hauer & Feld, Dallas, for appellant.

Jack C. Pate, Robert M. Gorsky, Burleson, Pate & Gibson, Dallas, for appellee.

Before ROBERTSON, CARVER and HUMPHREYS, JJ.

CARVER, Justice.

Robert Putter appeals from a judgment for three libels obtained against him by Barry Anderson, a Dallas police officer. We reverse and render as to two of the claimed libels because (1) Anderson's pleading and proof raised the issue of absolute privilege, and (2) Anderson's proof showed, as a matter of law, that two of the libels, being separate defamatory letters from Putter to the Dallas Police Department's Internal Affairs Division, were published to a quasi-judicial body and hence were absolutely privileged. We reverse and remand as to the third claimed libel, a defamatory letter from Putter to a member of the Dallas City Council, because the jury's damage findings, inclusive of all three alleged libels, cannot be apportioned so as to affirm the judgment for only the third libel.

None of the facts necessary for our ruling are in dispute. Anderson is a police officer employed by the City of Dallas. On January 25, 1976, Anderson arrested Putter's 16 year old son, Alan, for "unauthorized use of a motor vehicle." Putter and his wife went to the police station to look into the matter. Their son's physical condition, conversations that the Putters had with Anderson and other officers, and the Putter's dissatisfaction with the whole affair led to an immediate oral complaint about Anderson to the Internal Affairs Division of the Dallas Police Department. No cause of action was asserted on this oral complaint. When Putter was informed that no consideration could be given to complaints unless and until they were reduced to writing, he wrote, and hand-delivered, a letter dated March 5, 1976, to Captain Billy Prince, head of the Internal Affairs Division. Anderson claims that this March 5 letter was defamatory. In the fall of 1976, Anderson again arrested Putter's son, Alan, on a possession of marijuana charge. This arrest resulted in a second letter from Putter to Captain Prince, dated October 16, 1976, which Anderson claims was defamatory. Anderson also claimed that he was defamed by a letter dated October 17, 1976, which was prepared by Putter and sent to a member of the Dallas City Council. On January 21, 1977, Anderson sued Putter for libel on all three of the letters. Putter answered with a general denial. Shortly before the trial was scheduled to begin, Anderson filed a motion for continuance to which Putter agreed. The trial court overruled the motion. When the agreed motion for continuance was denied, Putter sought leave to amend his answer to add the defenses of absolute privilege, qualified privilege truth, and non-liability for actual damages. The court denied leave to amend, as well as subsequently tendered trial amendments, which raised these same defenses. The court denied Putter's motion for an instructed verdict; found liability as a matter of law; submitted only issues on actual and exemplary damages; and rendered judgment for Anderson on the jury's verdict. Putter's motion for new trial was overruled and this appeal followed.

## DEFENSIVE PLEADINGS

As the trial proceeded, Anderson offered the testimony of Captain Prince, the head of the Internal Affairs Division of the Dallas Police Department. Anderson elicited testimony from Prince to the effect that Putter's two separate letters to the Internal Affairs Division invoked a General Order of the police department which imposes upon the Division a duty to make an investigation and to draw a conclusion as to whether Putter's complaints about Anderson were sustained. Putter, relying on Prince's testimony, offered a trial amendment, including his plea of "absolute privilege," on the grounds that (1) the plea was an omission to be freely cured in the absence of prejudice to the other side under Tex.R.Civ.P. 66 or that (2) the issues had been tried by consent and the amendment would make the pleadings conform to the proof under Tex.R.Civ.P. 67. These rules provide as follows:

Rule 66. Trial Amendment

If evidence is objected to at the trial on the ground that it is not within the issues

made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

Rule 67. Amendments to Conform to Issues Tried Without Objection

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of special issues, as is provided in Rules 277 and 279.

The application of Rules 66 and 67 is within the sound discretion of the trial court. Nevertheless, that discretion is to be exercised liberally in favor of justice. *American Produce & Vegetable Co. v. J. D. Campisi's Italian Restaurant*, 533 S.W.2d 380 (Tex. Civ.App.—Tyler 1975, writ ref'd n. r. e.). When Anderson showed, by his own pleadings and proof, the publication of the two alleged libels to the Internal Affairs Division, whose duty to investigate and draw a conclusion on such investigation made it a quasi-judicial body (as concluded in the next section of this opinion), the particular issue of absolute privilege was before the court and the trial amendment offered should have been allowed so as to conform the pleadings to this issue under Rule 67. *See Johns-Manville Sales Corp. v. R. J. Reagan Co., Inc.*, 577 S.W.2d 341 (Tex.Civ.App.—Waco 1979, writ ref'd n. r. e.).

ABSOLUTE PRIVILEGE

■ The nature of "absolute privilege" is described in *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942).

1. An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action for libel or slander. Stated in another way, where there is an absolute privilege, no action in damages for language, oral or written, will lie; and this is true even though the language is false and uttered or published with express malice. [Citations omitted.]

2. Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case. [Citations omitted.]

3. The rule that communications uttered or published in the course of a judicial proceeding are absolutely privileged, applies to proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers.

166 S.W.2d at 912. Not all "executive officers, and boards and commissions" are quasi-judicial but only those which *exercise quasi-judicial powers.* Quasi-judicial power may briefly be described as the power or duty to investigate and to draw a conclusion from such investigation.

In *Reagan*, the court held the Board of Insurance Commissioners to be a quasi-judicial body when it exercised the duty to investigate an applicant for a license to sell insurance and to conclude from that investigation whether the applicant was of "good character and reputation." Other authorities have held, on similar reasoning, that

the State Bar Grievance Committee is a quasi-judicial body, *McAfee v. Feller*, 452 S.W.2d 56 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); that pardon proceedings before the Governor are quasi-judicial in nature, *Connellee v. Blanton*, 163 S.W. 404 (Tex.Civ.App.—Fort Worth 1913, writ ref'd); that a grand jury, before which an accusatory letter is published, is a quasi-judicial body, *Hott v. Yarbrough*, 245 S.W. 676 (Tex.Com.App.1922, opinion adopted); that the Railroad Commission, before which an accusatory letter was published, is a quasi-judicial body, *Aransas Harbor Terminal Railway v. Taber*, 235 S.W. 841 (Tex. Com.App.1921, judgmt adopted); and that the Pharmacy Board, before which a drug manufacturer's letter regarding a druggist's practices in dispensing the manufacturer's drug was published, is a quasi-judicial body, *Bloom v. A. H. Robins Co.*, 479 S.W.2d 780 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.), *cert. denied*, 410 U.S. 983, 93 S.Ct. 1504, 36 L.Ed.2d 179 (1973).

With these authorities before us, we must determine if the Internal Affairs Division of the police department of the City of Dallas is a quasi-judicial body or is exercising the functions of a quasi-judicial body when it received and acted upon Putter's letters. Captain Prince, the head of the Internal Affairs Division, and the recipient of Putter's letters, was called as a witness by Anderson. Anderson's own counsel proceeded to prove, by Captain Prince's testimony, that the Internal Affairs Division is required to conduct an investigation and conclude whether the citizen's complaint is justified. A finding by the Internal Affairs Division that a complaint is justified may go directly to the Chief of Police, for discipline of the officer, or it may go to a disciplinary board first and then to the Chief of Police. Captain Prince testified that this procedure was "in accordance with state law" and constituted a "General Order" of the police department. We do not find the General Order in our record, though both counsel have quoted it extensively in their briefs and in their argument. We accept Captain Prince's statement of the General Order and the exercise of the

Division's duty thereunder. The state law apparently referred to by Captain Prince is Tex.Rev.Civ.Stat.Ann. art. 6252–20 (Vernon 1970), which provides as follows:

In order that a complaint against a law enforcement officer of the State of Texas, including but not limited to officers of the Department of Public Safety and the Liquor Control Board, or against a fireman or policeman may be considered by the head of a state agency or by a chief or head of a fire department or police department, neither of which is under the protection of a civil service statute, the complaint must be placed in writing and signed by the person making the complaint. A copy of the signed complaint must be presented to the affected officer or employee within a reasonable amount of time after the complaint is filed and before any disciplinary action may be taken against the affected employee.

The testimony of Captain Prince is not challenged or disputed in the record; moreover he was called and examined as Anderson's own witness. Nothing exists in the record to suggest that Prince's testimony was anything but conclusive on the subject.

■ We find, from this testimony, that the Internal Affairs Division of the Dallas Police Department was a quasi-judicial body when, under its General Order, it exercised the duty to investigate Putter's written complaint of Anderson and the duty to draw a conclusion from the investigation regarding whether that complaint was sustained. Consequently, Putter's two letters to the Division were absolutely privileged and no cause of action may be predicated upon these letters. *Reagan v. Guardian Life Insurance Co., supra.*

## REMAINING CAUSE OF ACTION

■ Anderson also sought relief on a third letter prepared by Putter and sent to a member of the Dallas City Council. We are, however, unable to affirm the judgment in favor of Anderson since we do not have a jury finding of damages restricted to this third cause of action for libel. The

finding of the jury was for the damages, actual and exemplary, from all three libels urged by Anderson. This court cannot treat this finding to be the damages the jury would have found for one libel nor can this court perceive any means to apportion these damages from this record.

In *Grissom v. Lopez*, 280 S.W. 613 (Tex.Civ.App.—San Antonio 1926, writ dism'd), the court of civil appeals held that it was fundamentally erroneous for a single cause of action for malicious prosecution to be expanded into two or more causes of action and different damage awards found on each. In our case, the reverse has occurred and three causes of action have been compressed into one by virtue of single damage submission. In *Jackson-Strickland Transp. Co. v. Seyler*, 123 S.W.2d 928 (Tex. Civ.App.—Ft. Worth 1938, writ dism'd by agr.), the court was weighing the proper submission of a negligence case with separate elements of damage. In holding that separate elements should be submitted and jury's answer given separately, the court stated:

> It is unnecessary to cite a list of authorities which appropriately lay down the rule that where all such items of recovery are submitted to the jury in one issue and the jury returns a verdict in a single sum covering all such items and it is found that any one or more items be not supported by the evidence, the case must be reversed because the reviewing court cannot tell from the verdict how much the jury assessed in its verdict as a proper amount of recovery for the item or items which have no support in the evidence.

> On the other hand, if the jury finds on each separate item, or issue, separately, it is a simple matter to reform the judgment to fit the facts.

Similarly, in our case three libels were in issue, the trial court assumed all three had support in the evidence and submitted one damage issue for all three together. Now that it has been shown that two of the three libels were "not supported by the evidence," (being absolutely privileged) we can neither affirm nor modify but must remand Anderson's cause of action against Putter based upon Putter's letter to a member of the Dallas City Council. While no point of error discussed liability as related to this particular letter, we do not find evidence of "publication" in the record. "Publication" of libel by letter not only requires a showing that Putter composed and sent the letter, but must show the letter to have been received, read, and understood by a third person. *See* 50 Am. Jur.2d, *Libel and Slander* § 154 (1970). No doubt, this omission, as well as other concerns reflected in this record, will not recur on new trial.

Reversed and rendered in part and reversed and remanded in part.