MISSOURI–KANSAS–TEXAS
RAILROAD COMPANY,
Appellant,

v.

Guadalupe C. ALVAREZ, Appellee.

No. 13870.

Court of Appeals of Texas,
Austin.

Jan. 8, 1986.

Rehearing Denied Feb. 5, 1986.

Dan Moody, Graves, Dougherty, Hearon & Moody, Austin, for appellant.

Mack Kidd, Kidd, Whitehurst & Harkness, Austin, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

CARROLL, Justice.

Guadalupe C. Alvarez successfully brought suit against Missouri-Kansas-Texas Railroad Company (MKT) for personal injuries. On appeal, this Court reversed the judgment and remanded the cause for a new trial, holding that the wording of special issue number one constituted an impermissible comment on the weight of the evidence. *Missouri-Kansas-Texas Railroad Company v. Alvarez*, 670 S.W.2d 338 (Tex.App.1984). The Supreme Court re-

versed our judgment and remanded the cause to us for consideration of the remaining points of error urged by MKT. *Alvarez v. Missouri-Kansas-Texas Railroad Company*, 683 S.W.2d 375 (Tex.1985). We will affirm the judgment of the trial court.

MKT urges seventeen points of error. Under points one, two and three, MKT argues that the evidence established as a matter of law that it was not negligent in its application of the brakes. These points were rejected by this Court in our earlier opinion and are overruled without further discussion. Points of error five and six attack the perceived impermissible comment on the weight of the evidence set forth in special issue number one and have now been overruled by the Supreme Court.

In its remaining points of error, MKT contends that the trial court should have allowed evidence of intoxication; should have allowed MKT to amend its trial pleadings; erroneously excluded expert testimony; and finally, that there was no evidence to support the jury's verdict pertaining to damages.

### EVIDENCE OF INTOXICATION—AMENDMENT OF PLEADINGS

*1. Procedural history of the case.* The dispute between the parties arose out of a train-automobile collision on December 26, 1975. Suit was first filed in federal court and later removed to state court. MKT filed its original answer in state court on April 26, 1978. In this answer, MKT charged Alvarez with three specific acts of contributory negligence: accepting a ride with one known to be an untrustworthy driver; placing himself in such an alcoholic stupor that he could not take appropriate actions to protect himself; and failing to keep a proper look-out.

Almost four years passed before MKT filed its first amended original answer. This amended answer alleged certain additional affirmative defenses, but made no change in the allegations of contributory negligence.

The case was set for trial on July 27, 1982. On July 26, the trial court granted a motion in limine which, among other things, prohibited any evidence, questions, or comments concerning the fact that Guadalupe Alvarez, Antonio Ledesma and/or Antonio Tijerina had anything alcoholic to drink on the day of the accident without first obtaining the permission of the trial court.

On the day of trial, MKT requested leave of court to file a trial amendment alleging that Alvarez had failed to exercise ordinary care in exiting the automobile. Unlike MKT's previous allegations of contributory negligence, the trial amendment challenged Alvarez's conduct *after* he discovered his dangerous situation. All of MKT's previous allegations of contributory negligence placed in issue Alvarez's *antecedent* conduct—whether he was negligent in (1) accepting a ride with an untrustworthy driver; (2) placing himself in an alcoholic stupor so that he could not protect himself; and (3) failing to keep a proper look-out. Each of these allegations turns upon whether Alvarez used ordinary care in failing to guard against or appreciate the *possibility* of danger.

The proffered trial amendment would have placed in issue a distinctly different and even opposite *theory* of negligence—whether Alvarez was negligent *in his reaction* to a danger he *actually discovered.* Alvarez claimed surprise, and the trial court refused to allow the proposed amendment. MKT later unsuccessfully sought to file five similar trial amendments.

At the close of evidence, MKT submitted a special issue asking whether Alvarez failed to use ordinary care in exiting the automobile and removing himself from the path of the train. The trial court refused to submit the requested issue along with certain associated issues and instructions.

*2. Evidence of Intoxication.* Intoxication, in and of itself, does not constitute negligence, but evidence of intoxication is an evidentiary fact that may be considered by the trier of fact in determining whether or not a person is guilty of

some act of contributory negligence. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951).

■ The trial court took up the question of intoxication outside the presence of the jury and determined that there was only slight evidence of intoxication while the risk of prejudicial harm was great. Under the facts of this case, we hold that the trial court properly excluded evidence of intoxication since its probative value was substantially outweighed by the danger of unfair prejudice. 2 Ray, Texas Law of Evidence, § 1481 at 167 (3rd ed. 1980); Tex.R. Evid.Ann. 403 (Supp.1985). MKT's points of error eleven and twelve are overruled.

*3. Amendment of pleadings.* The seventh, eighth, ninth and tenth points of error attack the trial court's refusal to allow a trial amendment changing MKT's theory of contributory negligence, and the resulting refusal to allow requested special issues and instructions based on the newly alleged failure by Alvarez to exercise ordinary care in exiting the automobile. These points of error turn on a determination of whether the trial court abused its discretion in refusing to allow the requested trial amendments.

■ The trial court may allow pleadings to be amended during trial if an issue has been tried by consent, or if the amendment will preserve the presentation of the merits of the action and the objecting party fails to satisfy the court that the allowance of such an amendment would prejudice him in maintaining his action or defense on the merits. Tex.R.Civ.P.Ann. 66 & 67 (Supp. 1985). The decisions of the trial court granting or denying a trial amendment may not be overturned on appeal except upon a showing of abuse of discretion. *Hardin v. Hardin,* 597 S.W.2d 347 (Tex. 1980). As in this case, the objecting party generally resists the trial amendment on the basis of surprise.

As mentioned previously, MKT's trial amendments offered on the day of trial would have placed in issue for the first time the question whether Alvarez failed to use ordinary care in the actions he took *after* discovering the oncoming train. The prior allegations of contributory negligence were based solely on a theory that Alvarez *failed to appreciate and guard against* the *possibility* of danger from any source—by accepting a ride, by becoming intoxicated, and by failing to keep a proper look-out. Under the proposed trial amendments, the issue of contributory negligence would have turned instead on quite different matters—matters involving panic reaction by persons of ordinary care; milliseconds of difference in timing; and Alvarez's age, physical condition and abilities, as they would bear upon his reaction capacity. These new allegations would require quite new and different trial preparation by Alvarez's lawyers if they were to meet the new negligence theory.

■ Surprise is not the only basis for denying a trial amendment in this case. The question of diligence on the part of the party offering the trial amendment should also be addressed by the court. *Westinghouse Electric Corp. v. Pierce,* 153 Tex. 527, 271 S.W.2d 422 (1954); *Sanchez v. Matthews,* 636 S.W.2d 455 (Tex.App.1982, writ ref'd n.r.e.). In view of the procedural history of this case set forth above, the trial court's refusal to allow MKT's proposed trial amendments may be justified both on the basis of surprise and on the basis of lack of diligence by MKT. The seventh, eighth, ninth and tenth points of error are overruled.

## EXCLUSION OF EXPERT TESTIMONY

MKT apparently planned to call Jerry Simmons, an employee of the Texas Rehabilitation Commission, as an expert witness to rebut proof by Alvarez of loss of future earning capacity. The trial court excluded Simmons' testimony.

In its brief on appeal, MKT states that the trial court excluded Simmons' testimony because he had not been disclosed as an expert witness at least fourteen days before trial in supplementation of defendant's answers to plaintiff's interrogatories.

MKT admits that under Tex.R.Civ.P.Ann. 168 as amended in 1981 and in effect at the time of trial, the trial court was authorized to exclude testimony from an expert witness whose name had not been previously disclosed in response to an appropriate interrogatory. However, MKT argues that in this case no such interrogatory had been filed by Alvarez.

On July 22, 1982, *five* days before the trial of this case, MKT filed what is styled "Supplemental Answers to Plaintiff's Interrogatories Previously Filed in Federal Court." Interrogatory number 61(c) specifically asked "... whether the defendant retained or specifically employed for any purpose any expert not identified in response to prior interrogatories ..." In its supplement to this interrogatory, MKT stated: "Defendant may call Jerry Simmons ... as a vocational rehabilitation expert to testify on Mr. Alvarez's employability and earning capacity." Further, in a July 14, 1982, letter to the attorney for Alvarez, MKT stated: "Supplementing our answers to interrogatories previously filed in this cause, please be advised that defendant may call Jerry Simmons, ... as a vocational rehabilitation expert ..." While the interrogatories being supplemented do not appear as part of the record, it is clear from the material before us that MKT was responding to one or more "appropriate interrogatories" in listing Simmons as an expert witness whose name had not been previously disclosed. We hold under Rule 168 that Simmons was an undisclosed expert witness properly excluded by the trial court.

After Simmons was disqualified from giving opinion testimony concerning Alvarez's employability and loss of future earning capacity, MKT urged that he be permitted to testify as a "fact witness" concerning certain related matters: (1) services supplied by the Texas Rehabilitation Commission; (2) jobs and rates of pay available to a man with Alvarez's handicap; and (3) rates of pay for oil field and construction employment. The distinction between an "expert witness" and a "fact witness" suggested by MKT is not a real one, for it is readily apparent that testimony concerning the three subjects in question could only be opinion inferences drawn from hearsay information. While Simmons no doubt possessed, by virtue of his special skill, knowledge or experience, a capacity to draw better inferences than an ordinary person, this is only to say that he was an "expert" relative to such matters. *See Moore v. Grantham*, 599 S.W.2d 287 (Tex. 1980). The trial court properly determined that Simmons would be testifying in an expert capacity even though called as a "fact witness." Since Simmons was disqualified as an expert, the disqualification encompassed all matters about which he would testify by giving his expert opinion.

MKT did call Simmons as an expert witness by bill of exceptions. While Simmons testified to some pay rates substantially lower than the expert witness for the plaintiff, he also testified to an hourly rate of pay for oil-field workers substantially *in excess* of the hourly rate of pay testified to by the expert witness for Alvarez. Taking Simmons' testimony as a whole, it is clear that the exclusion of this evidence, if error, was not such an error as was "reasonably calculated to cause ... the rendition of an improper judgment ..." and was therefore harmless. Tex.R.Civ.P. 434 (1985). Points of error thirteen and fourteen are accordingly overruled.

## LACK OF EVIDENCE TO SUPPORT LOSS OF FUTURE EARNING CAPACITY

In points of error fifteen and sixteen, MKT argues that there was no evidence, and alternatively, insufficient evidence to support the jury's findings concerning loss of future earning capacity.

In reviewing a no-evidence point, we must consider only the evidence favorable to the answer by the jury and disregard all evidence or inferences to the contrary. In considering an insufficient evidence point, we must review and weigh all of the evidence, including any evidence contrary to

the jury's answer. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

MKT contends that when Alvarez's *actual* position, interest and goals are taken in account, there was clearly no loss of earning capacity after the accident. However, in a personal injury case the measure of damages is the diminished earning *power* or *capacity* of the plaintiff, not his *actual* lost earnings. *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573 (Tex. Civ.App.1968, writ ref'd n.r.e.). The record on appeal is filled with evidence of a diminution in earning *capacity* following the 1975 injury, and this Court will not hold as a matter of law that a one-legged laborer has the same earning *capacity* as a man possessed of all his limbs. Points of error fifteen and sixteen are overruled.

The judgment of the trial court is affirmed.

EARL W. SMITH, Justice, dissenting.

For the reasons set out below, I respectfully dissent. I believe that the trial court abused its discretion in refusing to allow evidence of intoxication; in refusing to allow MKT's requested trial amendment; and in refusing to allow the testimony of one of MKt's expert witnesses. I would reverse the judgment of the trial court.

The trial court should not have excluded evidence of intoxication because the danger of creating unfair prejudice in the jurors' minds did not substantially outweigh the probative value of the evidence. 2 Ray, Texas Law of Evidence § 1481, at 167-68 (3rd ed. 1980). The rules of admissibility are not concerned with the weight to be given to the evidence; that is a matter for the jury. *Id.* at 166. *See* Tex.R.Evid.Ann. 401, 402, 403 (Supp.1985).

## DANGER OF UNFAIR PREJUDICE

Intoxication is a type of evidence that by its nature tends to have an inflammatory and prejudicial effect. The overall context of the case should be kept in mind, however. There is no contention that Alvarez was the driver. Therefore, the prejudice that might attach to driving while intoxicated would not be a concern here. Also, Alvarez' recovery will be determined under the rules of comparative negligence. The slightest degree of contributory negligence will not bar recovery, which makes it unnecessary to give the plaintiff the benefit of every doubt in order to avoid the harsh results of the old contributory negligence rules.

"Unfair prejudice" should not be construed to bar evidence that merely has an adverse or detrimental effect on a party:

> Texas courts have sometimes used the word "prejudice" to refer to mere adversity or detriment to a party. But substantial authority rejects this as a ground for excluding evidence, and properly applies the term "prejudice" to emotional, irrational, or other similar improper decisional grounds.
>
> The Advisory Committee's note to federal rule 403 suggests two variables which may enter the decision whether to exclude evidence on the basis of unfair prejudice: (1) the probable effectiveness of a limiting instruction to the jury; and (2) the availability of other means of proof.

Blakely, *Article IV: Relevancy and Its Limits*, 20 Hous.L.Rev. 151, 167–168 (1983 Tex.R.Evid. Handbook) (footnotes omitted); *see Howell v. Burch*, 616 S.W.2d 685, 688 (Tex.Civ.App.1981, writ ref'd n.r.e.) (no error to admit evidence of divorce proceedings in spite of allegation that it would cause bias and prejudice toward defendants since that evidence directly contradicted defendants' substantive allegation); *Ledisco Financial Services v. Viracola*, 533 S.W.2d 951, 958 (Tex.Civ.App.1976, no writ) (debtor sued bill collector for harassment; in finding error for trial court to exclude evidence showing debtor's "affrays" with neighbors such that neighbors may have made harassing calls, the court said that "[a]lthough great caution should be observed in admitting evidence of collateral or extraneous acts which would tend to create prejudice against a party, it should

be allowed when it would tend either directly or by inference to establish or negate a principal fact in issue"); *Hussmann v. Leavell & Sherman*, 20 S.W.2d 829, 832 (Tex.Civ.App.1929) (court stated "a party cannot be deprived of the benefit of evidence which is relevant and material because it may also have a tendency to prejudice the adverse party in the eyes of the jury"), *aff'd*, 32 S.W.2d 643 (Tex.Comm'n App.1930, judgmt adopted).

## PROBATIVE VALUE

Intoxication is relevant to several issues in the case. Intoxication is an evidentiary fact that the jury may consider, along with other circumstances, to determine whether a person committed some act or omission constituting negligence. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 798 (1951). Evidence of intoxication, standing alone, does not establish negligence. *Id.* Intoxication does not lower the standard of care to which the law holds a person, however. *San Antonio Public Service Co. v. Fraser*, 91 S.W.2d 948, 950 (Tex.Civ.App.1936, no writ).

A passenger's duty of care is slight. A passenger may look at scenery, read, or sleep without being guilty of contributory negligence if the driver commits some negligent act that the passenger, if alert, could have prevented. *Edmiston v. Texas & N.O.R. Co.*, 135 Tex. 67, 138 S.W.2d 526, 530 (1940). A passenger ordinarily can rely on the driver's vigilance and skill unless the passenger knows from past experience or the manner in which the driver is operating the car that the driver is likely to be inattentive or careless. *Id.; Edmondson v. Keller*, 376 S.W.2d 5, 7 (Tex.Civ.App. 1964, writ ref'd n.r.e.).

These general principles concerning a passenger's duty of care have arisen in the context of considering a passenger's duty to keep a proper lookout. In this case, Alvarez' possible intoxication would admittedly have less relevance to the issue of failure to keep a proper lookout than to other issues. Assuming Ledesma was the driver (the possibility that Tijerina was the driver was raised), Alvarez could rely on Ledesma's skill and care because Ledesma was not intoxicated (at least, he blew a 0.0 on a breath test) and knew there was a railroad crossing in the area. Therefore, Alvarez, prior to his knowledge that the vehicle was stalled on the railroad tracks, was under no duty to keep a lookout. He could have been asleep in the back seat without being contributorily negligent on the issue of proper lookout; *i.e.*, any charge that had Alvarez been awake and alert, he would have seen or heard the train and would have been able to warn the driver or escape from the car faster because he saw the train earlier.

The issue of proper lookout, however, seems to cover events up to the time the car stalled on the tracks and the driver perceived that he could not get the car off the tracks in time to avoid the collision and got out of the car; *i.e.*, the time the sudden emergency was upon them. A passenger who is aware of an emergency has a duty to use reasonable care to protect himself. *Edmondson v. Keller, supra.* Even though a passenger does not have the same duty of lookout that the driver does, he is obligated to behave as a reasonable, prudent person to protect himself under the emergency conditions. The evidence shows that Alvarez knew the car was stalled on the tracks, as did Tijerina and Ledesma. Once stalled on the tracks, Alvarez and Tijerina, as passengers, had a duty to use reasonable care under the emergency circumstances to extricate themselves. Evidence of Alvarez' intoxication would provide one possible explanation why the driver and other passenger escaped in plenty of time while Alvarez did not.

Intoxication is relevant to whether Alvarez' conduct in exiting the car was that of an ordinary person using ordinary care. This conduct is intertwined with both contributory negligence, encompassed by MKT's pleading that he was in such a drunken stupor that he failed to use ordinary care to protect himself, and with the issue of proximate cause. Alvarez admits in his brief that the manner in which he exited the car is relevant to proximate

cause. The court gave the following definition of proximate cause to the jury:

> The term *"proximate cause"* means a cause which, in a natural and continuous sequence produces an event, and *without which such event would not have occurred.* To be a proximate cause of an event, the cause must be such that a reasonably prudent person, in the exercise of ordinary care, should have reasonably foreseen or anticipated that such event or similar event would follow such cause as a natural and probable consequence in the light of the attending circumstances. There may be more than one proximate cause of an event, but there can be only one sole proximate cause. If an act or omission of any person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause.
>
> An occurrence may be an unavoidable accident; that is, an event not proximately caused by the negligence of any party to it.

(emphasis added). Indeed, as it is undisputed that Alvarez missed escaping injury by fractions of a second, it is particularly relevant to the proximate cause issue whether the train's speed and time in applying the brakes caused Alvarez to be hit or whether Alvarez' possibly impaired reactions were a proximate cause of the train hitting him. There was evidence that if the brakes of the train had been applied when the engineer first saw that the vehicle was stalled on the tracks, the collision with the car would have occurred in any event.

Alvarez' testimony concerning his exit from the car contains many inconsistencies. He testified that the car stopped at the stop sign at the railroad tracks. *He was also aware that the car had stalled on the tracks.* These statements would indicate an alertness inconsistent with being asleep or in an alcohol-induced stupor, but would not rule out intoxication, taken with his other actions, as an explanation of his failure to use ordinary care in exiting the vehicle. However, in his deposition, he had testified that he was not even aware of the other occupants shouting at him, or of the oncoming train until he was actually getting out of the car, when he first saw the train's light. This testimony is consistent with being asleep, passed out, or intoxicated, and inconsistent with having been awake enough to know that they had stopped at the stop sign. He testified that he got in the back seat of the car and locked his door as was his habit, and that he usually drove a two-door car. When he tried to escape, the lock jammed (or he could not make it work; his testimony was that he "tugged" at the door). He first tried to push the seat forward, as one does in a two-door, then jumped over the seat. His testimony presents several problems. Tijerina, the car's owner, testified that all four doors and locks were working all right, "as far as he knew." Alvarez seemingly attempts to attribute his acts of first pushing the seat forward, and then jumping over the front seat, rather than attempting to slide *across* the back seat and exit the *left* rear passenger door, to the reflexive, panic-stricken acts of one who usually drives a two-door car. Such an explanation seems rather odd unless Alvarez was usually a *backseat passenger* in a two-door, rather than someone who usually *drove* a two-door. The reflexive, panic-stricken act of a driver of a two-door would seem to be to slide *across* the car to the opposite door. If he was not aware of the oncoming train until he was actually exiting the car, as stated in his deposition, why did he panic and try to jump over the seat before he was aware of the emergency condition responsible for inducing his panic?

Alvarez' exit from the car is the subject of inconsistencies other than those created by his testimony. Officer Looby testified that Tijerina told Looby, when questioned at the scene of the accident, that Alvarez exited out the *rear door.* Alvarez' testimony on direct examination did not specifically identify the door from which he exited; he just said that he jumped over the front seat. On cross-examination, a question that referred to Alvarez' "going out" the

right front door drew no contradictory response. Tijerina's trial testimony did not describe how Alvarez escaped from the car. He testified that he did not know what Alvarez was doing. Ledesma testified that he did not have a chance to see what was happening to Alvarez.

Intoxication is also relevant to MKT's complaints concerning its requested special issues on contributory negligence[1] and requested trial amendment, as these requests center on its pleading that Alvarez placed himself in such an alcoholic stupor that he could not take appropriate actions to protect himself. If evidence of intoxication were allowed, MKT would arguably have no need for a trial amendment, as "placed himself in such a drunken stupor that he could not take appropriate action to protect himself" is broad enough to encompass the requested issue on failure to use ordinary care in exiting the car.

The contention is made that evidence of intoxication is slight. That contention, however, seems to go more to the weight of the evidence than to its admissibility. The bill of exception shows the following testimony. Alvarez admitted to having two or three drinks. The jury may, but need not, believe the testimony of an interested witness. *Simmonds v. St. Louis, B. & M. Ry. Co.*, 127 Tex. 23, 91 S.W.2d 332 (1936). Karen Sulik, a Brackenridge Emergency Room nurse, testified, not to intoxication as such, but to the strong smell of alcohol on Alvarez, while admitting on cross-examination that other things could cause that smell. The evidence need not show that Alvarez met any particular test for intoxication, such as that for driving while intoxicated. It is simply one aspect of Alvarez' conduct.

Evidence of intoxication is relevant to several issues in this case. It provides a reasonable alternative explanation for Alvarez' behavior to the one he advanced.

The jury could believe that Alvarez behaved reasonably under emergency circumstances and that any inconsistencies in his behavior are explained by panic; or they could believe that Alvarez' behavior did not meet the reasonableness standard, in part, because of intoxication; or the jury could believe, in view of Alvarez' conduct, plus evidence of intoxication, that the failure of MKT to make timely application of the brakes was not a proximate cause of the accident, or that Alvarez, who knew the car was stalled on the tracks, failed to keep a proper lookout, which was negligence and a proximate cause of his injuries. It must be remembered that the driver and another passenger had time, not only to exit the car, but also to attempt to flag down the train and to yell at Alvarez to get out of the vehicle. The jury should be able to weigh all aspects of Alvarez' conduct to determine what explains it.

### MKT'S ENTITLEMENT TO A TRIAL AMENDMENT

MKT sought a trial amendment to change paragraph III of its First Amended Original Answer to read:

Defendant pleads as an affirmative defense plaintiff's contributory negligence. Plaintiff was contributorily negligent by failing to keep a proper lookout and by failing to exercise ordinary care in exiting the automobile to avoid injury.

If a defect in a pleading is called to the court's attention during trial, the court should freely allow amendment if the presentation of the merits will be subserved and the objecting party fails to satisfy the court that allowance of the amendment would prejudice him in maintaining his action. Tex.R.Civ.P.Ann. 66 (1979).

MKT's proposed trial amendment should not have surprised Alvarez. MKT did not attempt to change the factual basis or theo-

---

1. MKT requested the following special issues on Alvarez' contributory negligence. The court refused to submit them.

   [6A.] Do you find, from a preponderance of the evidence, that Guadalupe Alvarez failed to use ordinary care in exiting the automobile and removing himself from the path of the train on the occasion in question?

   [6B.] Do you find, from a preponderance of the evidence, that such failure was a proximate cause of the occurrence in question?

ry of its affirmative defense of contributory negligence. The allegation that Alvarez placed himself in such an alcoholic stupor that he could not take appropriate actions to protect himself is a broad allegation. This pleading should have put Alvarez on notice that MKT was referring to Alvarez' conduct in extricating himself from the car, since MKT had alleged other specific acts relating to the driver's untrustworthiness and Alvarez' failure to keep a proper lookout, both of which go to events happening before the car stalled on the tracks. The general rule is that broad pleadings to which no special exceptions have been properly lodged are to be given a liberal construction. *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977). Such a construction of this allegation easily could equate "appropriate actions to protect himself" with "ordinary care in exiting the auto," since getting out of the auto was the only method available to Alvarez to protect himself. To limit the construction of MKT's three specific allegations of negligence to events occurring before Alvarez discovered the train, as the majority opinion does, essentially makes the allegation "failing to protect himself" redundant. Since MKT's other specific acts went to events necessarily occurring *before* the time Alvarez said he discovered the approaching train, it is reasonable to interpret the other specific allegation as covering any other methods by which Alvarez could have protected himself. It is difficult to think of how he could have protected himself other than by using ordinary care to get out of the car. MKT's pleadings give adequate notice that *all* of Alvarez' conduct during the emergency would be part of the factual basis of its defense of contributory negligence.

Alvarez' pleadings and his testimony demonstrate that he understood that his conduct was at issue. His reliance on "sudden emergency" and his assertion that he used ordinary care under that emergency shows awareness that Alvarez' conduct—all of it—was at issue. The "emergency" was not limited to events happening before the peril was discovered; *i.e.*, look-out and unsafe driver. *See, e.g., Putter v. Anderson,* 601 S.W.2d 73 (Tex.Civ.App. 1980, writ ref'd n.r.e.) (abuse of discretion to deny trial amendment where plaintiff's pleadings showed adequate notice of defense of privilege in libel suit).

The requesting party's lack of diligence can be a reason to deny a trial amendment. *Wendell v. Central Power and Light Co.,* 677 S.W.2d 610, 619 (Tex.App.1984, writ ref'd n.r.e.). MKT, however, was not demonstrated to have lacked diligence. Much is made of MKT standing on the same three grounds of contributory negligence for four years: from filing its original answer April 26, 1978 to requesting leave to amend on July 27, 1982. A close examination of the chronology of the case, however, reveals a flaw in the four-year figure. From October 9, 1978, when Alvarez took a deposition, to sometime in 1981 (prior to November 4, 1981) when he sent notices to take more depositions, he apparently did nothing to advance the case. MKT filed a motion to dismiss for want of prosecution November 4, 1981 (overruled May 12, 1982). Alvarez thus seeks to charge MKT for between two and three years of his own failure to move the case forward expeditiously. In addition, Alvarez did not file special exceptions until July 21, 1982. The exceptions were in response to MKT's amended pleading of July 16, 1982, but attacked those grounds of contributory negligence that had been on file since 1978. Until Alvarez filed the special exceptions, MKT reasonably could believe that Alvarez understood MKT's pleadings. The exceptions were not ruled on before trial. If Alvarez had obtained a ruling sustaining the special exceptions, then MKT would have had the opportunity to amend in answer to the special exceptions. Arguably MKT's first notice that it would have a problem with its pleadings came when the court ruled on the motion in limine that sought to exclude any mention of intoxication. MKT requested permission to amend its pleadings the next day.

Since the trial amendment could not have caused surprise, and the party requesting

the amendment did not demonstrate a lack of diligence, the trial court should have allowed MKT to amend, and it was an abuse of discretion not to permit the amendment by MKT.

## TRIAL BY CONSENT

A review of the evidence shows that the issue of whether Alvarez acted as a person of ordinary care would have in exiting the car was tried by consent. MKT was therefore entitled to amend its pleadings to conform to the evidence. Tex.R.Civ.P.Ann. 67 (1979). If the record demonstrates that evidence on an issue has been fully developed under circumstances evidencing the parties' understanding that the issue was being decided, then an issue has been tried by consent and the court should allow amendment of the pleadings. 2 McDonald, Texas Civil Practice § 8.07, at 293–94 (rev. ed. 1982); see e.g., Realtex Corp. v. Tyler, 627 S.W.2d 441, 443 (Tex.App.1981, no writ).

Alvarez asserts that if evidence properly is admissible on one pleaded issue then a party's failure to object to that evidence does not result in an issue being tried by consent, relying principally on *Herrin Transportation Co. v. Parker*, 425 S.W.2d 876 (Tex.Civ.App.1968, writ ref'd n.r.e.). Alvarez' conduct in exiting the car was relevant and admissible on the "proximate cause" issue, he contends, and therefore he could not have objected to that evidence at its introduction so the principle of trial by consent cannot apply. *Herrin* is distinguishable from the current case, however. *Herrin* and similar cases arose in circumstances in which the party claiming that an issue had been tried by consent introduced evidence that applied to both a *pleaded and an unpleaded* issue. Thus, the party resisting the claim of trial by consent not only would not have had a sustainable objection to the introduction of the evidence, that evidence may not have even put him on notice that an unpleaded issue was being tried. In the instant case, in contrast, *Alvarez himself first put in issue his conduct in exiting the car* when his accident

reconstruction expert, John Bentley, testified. Bentley testified extensively concerning the ramifications of different ways that Alvarez could have chosen to exit the car. He concluded that exiting through the left rear door would have covered a greater distance and in all likelihood taken a greater amount of time to clear the oncoming train than the route Alvarez chose: over the seat and out the right front door. In other words, the expert contended, not only was Alvarez' conduct reasonable under the circumstances, it was also the best possible choice under the circumstances. Whether this was so or not was a fact issue for the jury.

The current case is much closer to *Watts v. St. Mary's Hall*, 662 S.W.2d 55 (Tex.App. 1983, writ ref'd n.r.e.). *Watts* involved a breach of contract claim in an employment situation. Plaintiff's direct testimony revealed that she had broken school regulations, about which she was aware, concerning reporting alcohol use by students. While neither side pleaded "good cause" or "wrongful discharge," the court held that both issues had been tried by consent. In Alvarez' case, his own evidence raised the issue of the reasonableness of his conduct in exiting the car. *See also Equitable Trust Co. v. Roland*, 644 S.W.2d 46 (Tex. App.1982, no writ) (admission that plaintiff no longer sought relief as a judgment creditor conceded payment issue and therefore the issue was tried by consent, even though it had been improperly pleaded under Rules 94 and 95).

Alvarez concedes that his conduct in exiting the car was relevant to the issue of proximate cause by his contention that because his conduct was relevant on that issue, he did not need to object to evidence of that conduct in order to prevent trial by consent on the issue of the reasonableness of that conduct. Alvarez' reasoning, however, fails to consider precisely how Alvarez' conduct is relevant to proximate causation. Alvarez' acts in exiting the car could, if found to be negligent conduct, have been a proximate cause of his injury. There can be more than one proximate cause of an

event. The only acts submitted to the jury, however, were Alvarez' failure to keep a proper lookout, which does not involve his conduct in exiting the car, and various acts by MKT and the other passenger and driver of the car. Evidence of Alvarez' acts in exiting the car, however, could only be relevant to proximate causation insofar as *Alvarez'* acts were negligent and a proximate cause of the accident. Evidence of Alvarez' conduct in exiting the car was not necessary to support an issue on whether MKT failed to timely apply its brakes, or sound its whistle, etc. The only way the jury could evaluate properly the issue of proximate cause was to have Alvarez' acts in exiting the car submitted to it in order to consider whether those acts were a proximate cause of Alvarez' injuries, and, if so, the percentage of negligence to assign to those acts.

Because the issue of whether Alvarez behaved as a reasonable, prudent person in exiting the car was tried by consent, MKT was entitled to a trial amendment and submission of that issue to the jury.

### EXCLUSION OF EXPERT TESTIMONY

The party serving interrogatories must specifically request the names of experts who may be called as witnesses. *Meyerland Co. v. Palais Royal of Houston, Inc.*, 557 S.W.2d 534, 538 (Tex.Civ.App.1977, no writ). Alvarez' interrogatories filed in the instant case did not request the names of experts who would be called by MKT, but rather asked for the names of all persons performing any services, direct or indirect, connected with the accident. MKT, in its answers to this set of interrogatories, objected to this question. Alvarez never obtained a ruling on the objection. Therefore, MKT did not have to answer the objected-to portion. Tex.R.Civ.P.Ann. 168 (Supp.1985). Alvarez also filed a request for production, which requested the identity of any persons consulted as experts,

along with copies of any documents submitted to them. MKT also objected to this request. Again, no ruling was obtained on the objections. Alvarez may have properly requested the names of MKT's experts in interrogatories filed in federal court; we say "may have" because one must make this determination by referring to MKT's answers, as nowhere in the papers of this cause does any proper request by Alvarez appear.[2]

The majority opinion holds that MKT's response, labeled "Supplemental Answers to Interrogatories filed in Federal Court," is sufficient for the record to support Alvarez' contention that MKT failed to disclose its expert according to the rules and so should be penalized. (MKT claimed that it was not under any duty to file this response.) The record shows, however, that Alvarez never properly requested the names of the experts, so as to put MKT under any duty to supplement. This ruling allows Alvarez a "substantial compliance" standard (*i.e.*, Alvarez' attempted requests in federal and state court should be read together and considered sufficient, although obviously not in strict conformity with the rules, because MKT could figure out what he meant), while applying a "strict compliance" standard to MKT, in that MKT should be strictly held to the fourteen-day limit,[3] even though MKT *voluntarily* disclosed the expert's identity in adequate time for Alvarez to have taken recognized defensive measures to meet the expert's testimony. *See generally National Surety Corp. v. Rushing*, 628 S.W.2d 90 (Tex.App.1981, no writ).

The problem of admitting the testimony of an "undisclosed" expert has been a difficult one for Texas courts. As noted in a recent article by Justice Kilgarlin, appellate courts have not applied consistent standards in their review, by an abuse of discretion standard, of the allowance or denial

---

**2.** The cause was first filed in federal court, and was dismissed by stipulation in the spring of 1978 (according to MKT's motion to dismiss for want of prosecution, the only place in the record discussing the disposition of the federal court action.)

**3.** Now 30 days under the equivalent Tex.R.Civ.P. Ann. 215-5 (Supp.1985).

of the undisclosed expert's testimony. Kilgarlin, *What to do with the Unidentified Expert,* 48 Tex.B.J. 1192 (1985). He suggests that the burden should be on the party seeking the admission of the testimony to show good cause sufficient to require its admission and that the rule should be *amended* to require the court to state that cause on the record; pointing out that some courts, incorrectly in his view, place the burden on the opponent to show surprise, move for a continuance, etc. While it would have been difficult to determine the proper standard in this case had there been an unidentified expert, the fact remains that there was never a proper request for the names of testifying experts.

Alvarez contends that Simmons' testimony actually helped him, rather than rebutting his expert, Hansen, because Simmons testified to a wage for oilfield workers of $10.00 per hour, a figure higher than that used by Hansen in calculating Alvarez' loss in earning capacity. Simmons did, indeed, at one point agree to a $10.00 figure for some oilfield jobs. That figure, however, must be analyzed in the context of Simmons' testimony, which, taken as a whole, rebuts Hansen's testimony.

Hansen based his estimate of a $3.00 per hour loss in wage-earning capacity on a $7.50/4.50 per hour differential, with $4.50 being his estimate of Alvarez' earnings in the kind of light industrial work that he could perform after the accident, and $7.50 being his estimate of per hour earnings in heavy manufacturing, construction, and oilfield work that Alvarez was physically incapable of performing after the accident. Simmons, on direct examination, testified to starting wages for light manufacturing ranging from $4.25 to $5.07 and up per hour. He then testified that he was not very familiar with construction and oilfield work; that wages in those areas depended on whether a job was a union job; that he had placed a client as a non-union framer for $4.30–35 per hour; and that union, heavy construction work would pay $6.50 per hour. He then testified that he could not recall wages of anyone he had placed in oilfield work in this area, but that he generally recalled wages of a little over $5.00 to $6.50 per hour. On cross examination, Alvarez' counsel questioned Simmons about oilfield jobs in the Giddings area, stating that Simmons "could not be saying that those jobs paid only $5.00 to $6.50 per hour." Simmons' answer was that it depended on the type of job, that he had "seen some statistics" and was trying to remember. Alvarez' counsel then asked if above $10.00 per hour would be the correct range. Simmons answered that some jobs would pay that well; that a driller would earn that kind of money but that he did not believe that the average roughneck would be earning that kind of money. Therefore, the $10.00 per hour figure cannot be seized on in isolation to demonstrate that Simmons' testimony does not rebut Hansen's. Although Simmons' cross-examination testimony is a bit garbled, it is clear that he was not giving $10.00 per hour as an average for all types of oilfield work but that he was attempting to make a distinction as to earning capacity between types of jobs requiring various skills. He may or may not have been a persuasive witness, since he admitted that he was not familiar with some of these jobs, but that is a matter of credibility for the jury to weigh. While Simmons never reduced his figures to a per-hour capacity differential, as did Hansen, the wage ranges he gave would result in different averages for lost earning capacity. And, important as the rebuttal of the dollar value, Simmons' testimony also rebuts Hansen's assumptions about the type of work that Alvarez could have performed before the injury by pointing out other factors involved in vocational placement evaluation besides physical capacity, such as Alvarez' long-time demonstrated and admitted desire for inside work, with accompanying lower wage rates, which would have limited his earning capacity even before the accident. Too, there was little or no evidence that Alvarez planned a change in his vocation before the accident.

Taken as a whole, Simmons' testimony tends to rebut Hansen's, though the quality of that testimony may be open to question,

since Simmons admitted that he was not very familiar with heavy industrial or oil-field jobs. The jury indeed might isolate Simmons' $10.00 per hour figure, as did the majority opinion, and use it. Such an evaluation of the witness' credibility, and the weight to be given his *entire* testimony on Alvarez' future earning capacity, however, is the jury's function.

For the reasons set out above, I believe that the trial court abused its discretion, and its errors were such as were reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Tex.R.Civ.P.Ann. 434 (1985). I would reverse the judgment of the trial court.